**TURNER, Appellant,**

v.

**ENGLEWOOD et al., Appellees.**

[Cite as *Turner v. Englewood,* 191 Ohio App.3d 1, 2010-Ohio-5881.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 23909.

Decided Dec. 3, 2010.

Michael R. Eckhart, for appellant.

Michael M. McNamee, Cynthia P. McNamee, Gregory B. O'Connor, and Lynnette Dinkler; and Edward Dowd and Brendan Healy, for appellees.

_____

BROGAN, Judge.

{¶ 1} After deeming Stella Turner's building a nuisance that needed to be abated, the city of Englewood demolished it. Before doing so, however, Englewood failed to afford Turner any administrative remedies concerning either its nuisance or demolition determination. Turner brought a "takings" claim against Englewood, seeking to recover damages for the city's violation of her right to procedural due process of law. But a jury concluded that Englewood's demolition was justified, finding that the building was a nuisance and that abatement by demolition was reasonably necessary. Englewood then asked the trial court to declare that it was entitled under its Building and Housing Code, as well as under the Revised Code, to collect the cost of demolition from Turner. The trial court entered judgment accordingly.

{¶ 2} Turner appeals only the declaratory judgment. Turner contends that Englewood's violation of her right to due process of law should preclude the city from collecting its demolition costs. Turner also alleges that Englewood failed to follow the demolition procedures in its own Codified Ordinances, and she contends that this failure, too, should preclude Englewood from collecting its costs. We agree with Turner's allegation and contentions and will reverse.

I

{¶ 3} Turner owns real property in Englewood, Ohio, on which (before it was demolished) a dilapidated nursing home sat. In early July 2003, Englewood's housing officer identified structural defects and other conditions that violated the Building and Housing Code of the city's Codified Ordinances, rendering the building a nuisance. The housing officer sent Turner a notice of violation, as well as an order that gave her 30 days in which to either fully abate the nuisance or work out an abatement plan with the city. Turner did neither. Later that July, the Englewood city council adopted a resolution that affirmed the housing officer's nuisance and abatement determinations. Around three months later, on October 30, 2003, Englewood filed in the court of common pleas a nuisance-abatement action against Turner that asked the court to order abatement. Englewood moved for summary judgment. In December 2004, the trial court sustained Englewood's motion after concluding that Turner could not contest the nuisance determination. The court found that Turner had failed to exhaust the

administrative remedy available to her in (former) section 1454.17 of the Building and Housing Code: "Determinations of Council in conjunction with the administration of this chapter may be appealed only to the Court of Common Pleas. Council shall hear appeals from rulings of the Housing Officer." Englewood Codified Ordinances ("E.C.O.") 1454.17(b). The court said that Turner could have appealed the housing officer's notice to the council or she could have appealed the council's resolution to the common pleas court. The trial court ordered Turner to abate the nuisance within 30 days. The court said that if Turner failed to abate, Englewood could move to hold her in contempt and submit evidence of how much it would cost the city to abate and repair the nuisance on Turner's behalf. The next month, January 2005, Turner filed a separate action that challenged the council's resolution, an action that the trial court consolidated with Englewood's. Englewood then moved for summary judgment on Turner's complaint, and the court sustained the motion. Turner appealed to this court.

{¶ 4} While we were considering Turner's appeal, in September 2005, Englewood sent Turner's attorney a short letter that declared the city's intent within 30 days to demolish the building. Turner sought a stay of execution from the trial court, and the court agreed to stay its judgment if Turner posted a $75,000 supersedeas bond.[1] Turner moved this court to modify the amount, but we denied the motion, unable to conclude that the trial court had abused its discretion. Turner did not post the bond, and, in December 2005, Englewood began demolition, which was completed by the beginning of January 2006 at a total cost of $63,991.15. No one informed us that the building was demolished.

{¶ 5} In May 2006, we reversed the trial court's two grants of summary judgment for Englewood. See *Englewood v. Turner*, 168 Ohio App.3d 41, 2006-Ohio-2667, 858 N.E.2d 431 (*Turner I*). We found that Turner had no administrative remedy that she could have exhausted. Despite the provision in the Building and Housing Code that suggested some sort of appeal, we found that the code provided no procedure for such an appeal, nor did it contain a provision for a hearing or other opportunity to present evidence. We also found that Turner was never informed that she had a right to a hearing. Finally, we concluded that despite section 1454.17's authorization, under the Administrative Procedure Act, council resolutions were not subject to common-pleas-court review. We remanded the matter for further proceedings.

{¶ 6} On remand, Turner moved to amend her complaint. She wanted to add a counterclaim that sought compensation for Englewood's taking of her property without due process of law. Turner also wanted to add a declaratory-judgment

---

1. The amount was based on Englewood's claim that it would lose a $75,000 community-development block grant that the city intended for the demolition cost.

claim that the $63,991.15 lien attached to her property was invalid—a lien that Englewood was using to collect its demolition costs. In June 2007, the trial court overruled Turner's motion, finding it moot in light of the fact that she had failed to post the bond and the building had already been demolished. The court then concluded that its judgment was satisfied and any claims that Turner could raise were moot, so it dismissed the case. Turner again appealed to this court.

{¶ 7} In September 2008, we again reversed, holding that the trial court should have allowed Turner to both add a takings claim and seek a declaratory judgment that the lien was invalid. See *Englewood v. Turner,* 178 Ohio App.3d 179, 2008-Ohio-4637, 897 N.E.2d 213 (*Turner II* ). We first determined that a property owner may recover damages from a municipality for the latter's taking of property (using its police powers) without due process of law. We then said, citing *Turner I,* that "Turner was not afforded proper administrative remedies regarding abatement of the nuisance." *Turner II* at ¶ 37. We said that "there has never been a judicial determination of a public nuisance, nor did Turner have an opportunity to be heard at an administrative level with a judicial review of whether a public nuisance existed." Id. at ¶ 54. And we said that while statutory law allows municipalities to collect demolition costs by placing a lien on the property, courts have permitted challenges based on claims of nonliability. Id. at ¶ 55. In remanding the case, we said that the burden was on Englewood to prove that it was justified in destroying Turner's building.

{¶ 8} Also in *Turner II,* we rejected Englewood's argument that Turner had an opportunity to be heard but failed to post the bond that would have prevented the demolition. We found that the trial court's nuisance-abatement judgment did not expressly authorize demolition. Rather, it said that if Turner failed to abate, Englewood could move for a contempt order and submit evidence of the costs associated with abatement and repair—neither of which Englewood did. We also found that the trial court's judgment mentioned only abatement and repair, saying nothing about demolition. We concluded that at the very least, a factual question existed concerning the judgment's meaning.

{¶ 9} Finally, in *Turner II,* we noted Englewood's apparent failure to follow its own demolition procedures found in the Building and Housing Code. We observed that Englewood amended the procedures in 2004 and added a provision (among others) specifically for situations in which the housing officer determines that a nuisance should be demolished. The provision directs the officer to send a "demolition notice of violation" and specifies the contents of the notice. We found that Englewood sent only a letter of intent that failed to contain most of the required information.

{¶ 10} On remand, Turner amended her complaint, and the case proceeded to trial on her takings claim. A jury concluded that Englewood was justified in

demolishing Turner's building. The jury found that Englewood had proved by clear and convincing evidence both that the building did constitute a nuisance and that abatement by demolition was reasonably necessary. Englewood then moved for a declaratory judgment that it was entitled to demolition costs under section 1454.11 of the Building and Housing Code, as well as under R.C. 715.261. On February 3, 2010, the trial court entered judgment accordingly.

{¶ 11} Turner appeals now for a third time, appealing only the declaratory judgment.

## II

{¶ 12} Turner presents two assignments of error that in essence allege one error: the trial court is wrong that Englewood is entitled to its demolition costs. The court is wrong, Turner contends, for two reasons. One, argued in the first assignment of error, Englewood should be precluded from collecting its costs because it deprived Turner of her right to due process of law. And, two, argued in the second assignment of error, Englewood should be so precluded because the city failed to follow its own procedures for demolishing a nuisance. We agree with both reasons.

### A. No due process, no demolition costs

{¶ 13} Section 1454.11 of the Building and Housing Code, along with R.C. 715.261, permits Englewood to collect nuisance-abatement costs. But the right to these costs presupposes that abatement was valid—substantively and procedurally. The jury determined that Englewood was justified in demolishing Turner's building, that Englewood did not take Turner's property in violation of the substantive law. But Englewood accomplished the justified action by violating procedural law, which was not justified. Issues under the substantive law were determined by the jury; separate issues under the procedural law are determined here.

{¶ 14} In *Turner II,* we identified the pertinent consequence that a city incurs if it takes property absent due process of law. We said (quoting the Eighth District) that if a city deprives a property owner of due process of law, " 'the city will be precluded from receiving its demolition costs.' " *Turner II* at ¶ 34, quoting *Cleveland v. W.E. Davis Co.* (July 18, 1996), Cuyahoga App. No. 69915, 1996 WL 403337, *6; see *Cincinnati v. York Masons Bldg. Assn.,* Hamilton App. Nos. C–080003 and C–080019, 2008-Ohio-4271, 2008 WL 3878320, at ¶ 41 (holding that because the property owner was *not* denied its right to due process, the city *could* collect its demolition costs under its building code and the Ohio Revised Code). Specifically, despite the fact that the demolition was lawful under the

substantive law, a city may not collect the costs of the demolition if the deprivation led to the demolition.

{¶ 15} We have previously found that Englewood deprived Turner of procedural due process of law. In *Turner I*, we found that before her building was demolished, "Turner * * * was provided with no notice of any right to a hearing or to present evidence." *Turner I* at ¶ 20. We said in *Turner II* (quoting the Eighth District) that " 'where a city has failed to provide a property owner with an opportunity for hearing or appeal prior to the razing of property, the city has denied the owner due process of law.' " *Turner II* at ¶ 34, quoting *W.E. Davis Co.* at *6. A hearing before a taking—especially a taking-by-demolition—is critical. "The hearing affords the interested party the opportunity to appear and be heard in person, or by an attorney, in opposition to the proposed demolition of the building, and to do all of the following: (1) Present the party's position, arguments, and contentions; (2) offer and examine witnesses and present evidence in support; (3) cross-examine witnesses purporting to refute the party's position, arguments, and contentions; (4) offer evidence to refute evidence and testimony offered in opposition to the party's position, arguments, and contentions; and (5) proffer any such evidence into the record, if the admission of it is denied by the director of buildings and inspections." *York Masons* at ¶ 45 (Painter, J., dissenting). Turner was entitled to an opportunity, at least, to persuade Englewood not to destroy her building; Englewood failed to afford her one.

{¶ 16} Englewood's failure paved the way for it to demolish Turner's building. Englewood did so without affording Turner a single administrative remedy, which "requires, at a minimum, notice, a hearing, and an opportunity to introduce evidence." *Turner I* at ¶ 13, citing *State ex rel. McArthur v. DeSouza* (1992), 65 Ohio St.3d 25, 27, 599 N.E.2d 268. Englewood's destruction after deprivation precludes collection.

{¶ 17} The first assignment of error is sustained.

### B. Englewood failed to follow its own demolition procedures, which rendered the demolition unauthorized

{¶ 18} As noted above, in late 2004, Englewood amended its Building and Housing Code and added administrative remedies for property owners. Pertinent here are sections 1454.09 and 1454.18.

{¶ 19} Section 1454.09 directs the housing officer to send a "demolition notice of violation" to all interested parties. See E.C.O. 1454.09(a). This section also dictates the notice's contents: (1) a description of the nuisance property, (2) a description of the conditions that constitute a nuisance, (3) notice that the owner has 30 days either to demolish the nuisance or work out a demolition schedule

with the city, and (4) the date and time (within 30 days of the notice date) that a prescheduled adjudicatory hearing will be held before the Property Maintenance Hearing Board ("the board"). E.C.O. 1454.09(b).[2]

{¶ 20} As we said above, in *Turner II,* we found that Englewood failed to provide Turner with notice that complied with this section: "Instead of sending a demolition notice complying with these requirements, Englewood's attorney sent Turner's attorney a 'courtesy' letter in September 2005, indicating that the city intended to proceed to demolish the existing structures on Turner's land within 30 days. None of the matters outlined in section 1454.09 were mentioned, other than the fact that Englewood intended to demolish the property described as 20 North Union Road." *Turner II* at ¶ 48. Critically, Englewood also failed to hold the mandatory hearing. The failure to comply with its own procedures led Englewood to demolish Turner's building without proper authorization.

{¶ 21} The council, by resolution, authorized the demolition, but the council does not have jurisdiction over this matter. In the amendments to section 1454.18, council ceded jurisdiction to the board, "delegat[ing] to the Board the adjudicatory power to review demolition notices of violation as set forth in Section 1454.09(b)." E.C.O. 1454.18(c). The board is directed, after the hearing, to issue a written decision "as to whether the Housing Officer's decision as set forth in the notice of violation should be affirmed, reversed, or otherwise modified in whole or in part." E.C.O. 1454.18(k). Section 1454.09, too, states that it is "[t]he Board [that] shall affirm, reverse, or modify the determinations made by the Housing Officer in the demolition notice of violation, including the existence of the nuisance and the demolition remedy deemed necessary by the Housing Officer, in accordance with Section 1454.18." E.C.O. 1454.09(b). Section 1454.18 plainly states that it is the board's decision that authorizes any abatement action. See E.C.O. 1454.18(k).[3]

---

**2.** "The demolition notice of violation shall describe with reasonable particularity the premises deemed to be a nuisance; describe the conditions constituting the public nuisance; specify that an owner has thirty days within which to either fully and completely abate the nuisance via demolition or work out a schedule, satisfactory to the City, for the demolition, with sufficient surety acceptable to the City to guarantee timely completion of the abatement according to schedule; and inform interested parties of the date and time of the pre-scheduled adjudicatory hearing date before the Board. The hearing date shall be set no less than thirty days after the date of the demolition notice of violation." E.C.O. 1454.09(b).

**3.** "The decision shall authorize action, by the City Manager or his or her designee, on behalf of the City, to abate the nuisance. Action by the City Manager, personally or through a designee, shall be through such legal or administrative channels as are deemed most appropriate or though use of either City or private labor to effect the necessary nuisance abatement." E.C.O. 1454.18(k).

{¶ 22} When Englewood amended its Building and Housing Code in 2004, the city established for itself a clear path to follow after the housing officer determines that nuisance property should be demolished. Yet here, Englewood inexplicably failed to follow that path. Instead, the council usurped the board's authority, having no jurisdiction to affirm the housing officer's determinations or authorize abatement of Turner's building. Englewood's destruction after usurpation also precludes collection.

{¶ 23} The second assignment of error is sustained.

### III

{¶ 24} Because of its procedural misdeeds, Englewood is not entitled to its demolition costs. The assignments of error having been sustained, the declaratory judgment of the trial court is reversed.

Judgment reversed.

GRADY and McFARLAND, JJ., concur.

MATTHEW W. McFARLAND, J., of the Fourth District Court of Appeals, sitting by assignment.

