[Cite as *Oliver v. Marysville*, 2018-Ohio-1986.]

**IN THE COURT OF APPEALS OF OHIO**
**THIRD APPELLATE DISTRICT**
**UNION COUNTY**

BETTY OLIVER,

    PLAINTIFF-APPELLANT,           CASE NO. 14-18-01

    v.

CITY OF MARYSVILLE, ET AL.,         O P I N I O N

    DEFENDANTS-APPELLEES.

Appeal from Union County Common Pleas Court
Trial Court No. 2016-CV-0003

Judgment Affirmed

Date of Decision: May 21, 2018

APPEARANCES:

    *Aaron E. Michel* **for Appellant**

    *Patrick Kasson and Kari D. Hehmeyer* **for Appellee,**
    **City of Marysville**

**ZIMMERMAN, J.**

{¶1} This appeal is brought by Betty Oliver, the Plaintiff-Appellant ("Appellant") herein, from the judgment of the Union County Court of Common Pleas, granting summary judgment in favor of Defendant-Appellees, the City of Marysville, the Union County Auditor, and the Union County Treasurer, in a declaratory judgment and injunctive relief action. On appeal, Appellant asserts that the trial court erred: 1) by finding that the nuisance abatement (relative to her property) was performed in accordance with the prior order of the court; 2) by finding that the City of Marysville was immune from tort damages; 3) by finding that there were no genuine issues of material fact regarding the trial court's prior order and the validity of a tax lien on Appellant's property; 4) by concluding that R.C. §715.261 does not establish a deadline for the certification of abatement costs; and 5) by concluding that the certification of abatement costs was proper. For the reasons that follow, we affirm the decision of the trial court.

*Factual Background*

{¶2} In 2006 Betty Oliver and her husband, Charles Oliver, purchased real estate in Marysville, Ohio. (Doc. No. 1). Appellant reportedly suffered from a hoarding disorder, which resulted in the accumulation of possessions and debris on the property. (*Id.*). Attempts to have Appellant and her husband remove the debris from the property were unsuccessful, resulting in the Union County Board of Health

(the "Board") and the City of Marysville (the "City") filing a complaint against Appellant and her husband in 2011 in the Union County Common Pleas Court.[1] (*Id.*). The Board and the City alleged in the complaint that because Appellant and her husband had failed to clean up the trash and debris on the real estate, a nuisance existed thereupon. (*Id.,* Ex. A). The complaint further alleged that Appellant (and her husband) were not permitted to reside in the home because of their failure to obtain an occupancy permit after the home was renovated after a fire.

{¶3} On May 23, 2012, the trial court issued its judgment entry in case 2011-CV-0278, finding that the defendants were in default for failing to file an answer to the nuisance complaint. (*Id.*). Thus, based upon the information contained in the complaint, the trial court ordered that because a "no occupancy" permit had been issued by the Health Department, no one was permitted to reside in the home on the property. (*Id.*). Further, in granting a default judgment against Appellant, the trial court declared that a nuisance existed upon the property, and ordered Appellant to "clean up both [the] inside and outside of the home and that all trash, debris, excess material and/or junk be removed from the premises within the next thirty (30) days." (*Id.*). The trial court's order also provided notice that the failure to clean up the property would result in the Board and City "take all necessary steps and/or actions to abate the nuisance located at 325 South Plum Street" and that the Appellant would

---

[1] Union County case number 2011-CV-0278. Further, Charles Oliver passed away while the 2011 case was pending.

be fully liable to the Board and the City for the total costs incurred in abating the nuisance located upon the real property. (*Id.*). Finally, the trial court ordered that all costs incurred by the Board and the City in abating the nuisance be certified to the Union County Auditor for inclusion in the real estate taxes due upon the real estate.[2] (*Id.*).

{¶4} The Appellant failed to abate the nuisance on her property within the thirty-day (30) period ordered by the trial court, and resulted in the City hiring SERVPRO ("SERVPRO") to clean up the property. (Doc. No. 1; Ex. E). SERVPRO cleaned the property on September 14, 2012, at a cost of $12,381.75, which the City paid. (*Id.*).

{¶5} Nearly two (2) years later, on June 14, 2014, Appellant's property was sold for $27,000. (Doc. No. 1, Ex. H). Prior to closing on the property, the City presented Appellant with SERVPRO's bill. (*Id.*). So, to complete the closing, Appellant and the buyer executed a "hold back and escrow agreement" with the title company, which identified that there was an unresolved property bill (from SERVPRO), payment of which would be resolved after the real estate closing. (Doc. No. 13, Ex. A). Thus, the proceeds from the sale of Appellant's property were placed into an escrow account. (*Id.*).

---

[2] Appellant did not appeal the trial court's judgment in case number 2011-CV-0278.

*Procedural History*

{¶6} On January 5, 2016, Appellant filed a complaint in the trial court for a declaratory judgment and injunction (in Case Number 16-CV-0003). (Doc. No. 1). Appellant listed the Board of Health, the City of Marysville, the Union County Auditor, the Union County Treasurer, and Schultze, Howard, & Cox (as escrow agent) as defendants. (*Id.*). In her complaint, Appellant requested: that the trial court declare the tax lien invalid; order the Union County Auditor to strike the lien from the tax duplicate; enjoin the Union County Treasurer from collecting the lien; order the funds held in escrow be released to Appellant; and order the Board and the City to pay the costs of the action, including attorney fees. (*Id.*).

{¶7} Thereafter, all named defendants filed answers to Appellant's complaint. (Doc. Nos. 13, 14, 15, and 16). On March 9, 2016, defendant Schulze, Howard, & Cox filed a motion to deposit the escrowed funds of the sale with the court and to release them from compliance with the trial court's scheduling order. (Doc. No. 21). Appellant did not object and the trial court granted the motion to interplead the funds. But, the trial court overruled defendant Schulze, Howard, & Cox's request to be released from the scheduling order. (Doc. No. 24). However, on April 19, 2016, Appellant dismissed her claims against defendant Schulze, Howard, & Cox, due to the interpleading of funds with the court. (Doc. No. 29).

{¶8} On March 17, 2016, the Board filed a motion for judgment on the pleadings. (Doc. No. 23). The Board alleged that as a political subdivision it was immune from all tort claims. (*Id.*). The Board further claimed that the Appellant's "taking" claim was not ripe. (*Id.*). Lastly, the Board claimed that Appellant had not pled the necessary requirements for "selective prosecution," nor had she complied with the statute of limitations for filing tort claims against a political subdivision. (*Id.*).

{¶9} On April 27, 2016, the City filed its motion for judgment on the pleadings. (Doc. No. 31). The City alleged that Appellant set forth no cause of action against it, and further, as a political subdivision, it was entitled to a grant of immunity. (*Id.*). The City also alleged that Appellant's complaint was insufficient to maintain a selective prosecution claim, but even if it was sufficient, the selective prosecution claim was barred by *res judicata*. (*Id.*). Lastly, the City alleged that the Appellant did not have a valid claim for a "taking" and Appellant's allegations in general were barred by the statute of limitations. (*Id.*). In response, Appellant filed a motion to amend her complaint on May 10, 2016 (Doc. No. 33), which was opposed to by the Board and the City. (Docs. 35 and 42).

{¶10} On September 2, 2016, the Board filed a motion for summary judgment. (Doc. No. 46). Thereafter, the trial court issued its journal entry on September 8, 2016 ruling that the Board and the City were both political

subdivisions and immune from tort damages. (*Id.*). The trial court also found that the Appellant presented no facts that would support her claim of selective prosecution. (*Id.*). In regards to the declaratory judgment regarding the tax lien, the trial court found that there may be a set of facts that could support Appellant's claim against the City. (*Id.*). However, with respect to the Board, the trial court sustained its motion for judgment on the pleadings, and dismissed the Board as a party to the litigation. (*Id.*). The trial court also granted the City's motion for judgment on the pleadings on all claims except for the declaratory judgment claim regarding the validity of the tax lien. (*Id.*). Finally, the trial court granted Appellant leave to amend her complaint as to the declaratory judgment claim only. (*Id.*).

{¶11} On September 16, 2016, Appellant filed an amended complaint for declaratory relief in the trial court. (Doc. No. 50). To the amended complaint, the remaining defendants, the Union County Auditor, the Union County Treasurer, and the City, all filed timely answers. (Doc. Nos. 53, 54).

{¶12} On September 29, 2016, the City filed its motion for summary judgment. (Doc. No. 55). Attached to the motion for summary judgment was a document signed by the Appellant, the City Law Director, and others that read: "agreement to allow entry onto the premises in order to remove personal property that does not present a public health risk (the "Agreement")." (*Id.,* Ex. 1). Appellant

filed her response to the City's motion for summary judgment on October 25, 2016. (Doc. No. 58).

**{¶13}** Ultimately, on December 28, 2017, the trial court ruled on the summary judgment motions of the Appellant and the City. (Doc. No. 84). The trial court found that the Appellant had failed to properly authenticate her exhibits in her motion for summary judgment pursuant to Civ.R. 56(C). Thus, the trial court declined to consider such exhibits. (*Id.*). In regards to the City's motion for summary judgment, the trial court found that neither the original journal entry nor R.C. 715.261 established a deadline for the certification of costs of the abatement. (*Id.*). The trial court further found that the tax lien on Appellant's property was valid, pursuant to the judgment entry in case number 2011-CV-0278 and per R.C. 715.26 and R.C. 715.261. (*Id.*).

**{¶14}** Accordingly, the trial court sustained the City's motion for summary judgment and dismissed Appellant's complaint in its entirety. (*Id.*).

**{¶15}** From this final judgment entry Appellant appeals, and presents the following assignments of error for our review:

### ASSIGNMENT OF ERROR NO. I

**THE TRIAL COURT ERRED TO THE PREJUDICE OF THE PROPERTY OWNER BY FINDING FROM THE PLEADINGS THAT THE ABATEMENT WAS PROFESSIONAL AND IN ACCORDANCE WITH THE PRIOR ORDER OF THE COURT.**

## ASSIGNMENT OF ERROR NO. II

**THE TRIAL COURT ERRED TO THE PREJUDICE OF THE PROPERTY OWNER BY FINDING THAT THE CITY OF MARYSVILLE WAS A POLITICAL SUBDIVISION PERFORMING A GOVERNMENTAL FUNCTION AND THEREFORE IMMUNE FROM TORT DAMAGES AND BY DISMISSING THE CLAIM FOR DAMAGES.**

## ASSIGNMENT OF ERROR NO. III

**THE TRIAL COURT ERRED TO THE PREJUDICE OF THE PROPERTY OWNER BY FINDING THAT THERE ARE NO GENUINE ISSUES OF MATERIAL FACT AS TO WHETHER THE CITY COMPORTED WITH THE PRIOR COURT ORDER AUTHORIZING ABATEMENT AND CERTIFICATION OF COSTS AND WHETHER THE TAX LIEN IS VALID AND DISMISSING THE COMPLAINT WITH PREJUDICE.**

## ASSIGNMENT OF ERROR NO. IV

**THE TRIAL COURT ERRED TO THE PREJUDICE OF THE PROPERTY OWNER BY CONCLUDING THAT R.C. § 715.261 DOES NOT ESTABLISH A DEADLINE FOR CERTIFICATION AND THAT CERTIFICATION OF COSTS SUBMITTED BY THE CITY IN 2014 IS NOT TIME BARRED OR OTHERWISE SUBJECT TO ANY TIME LIMITATION.**

## ASSIGNMENT OF ERROR NO. V

**THE TRIAL COURT ERRED TO THE PREJUDICE OF THE PROPERTY OWNER BY CONCLUDING THAT THE CERTIFICATION IS VALID BECAUSE IT COMPORTS WITH R.C. § 715.261 AT THE TIME OF THE ABATEMENT RATHER THAN AT THE TIME OF THE CERTIFICATION.**

{¶16} Due to the interrelated nature of Appellant's assignments of error and for ease of analysis, we have consolidated Appellant's first and second assignments of error.

*Appellant's First and Second Assignments of Error*

{¶17} Appellant's first and second assignments of error address the trial court's ruling on the City's motion for judgment on the pleadings. In her first assignment of error, Appellant argues that the trial court erred by finding that the abatement was professionally performed in accordance with the prior trial court order (in case number 2011-CV-0278). In her second assignment of error, Appellant argues that the trial court erred by finding that the City was a political subdivision performing a governmental function, and as such, was immune from tort damages. For the reasons that follow, we overrule Appellant's first and second assignments of error.

*Standard of Review*

{¶18} "A trial court reviews a Civ.R. 12(C) motion for judgment on the pleadings using the same standard of review as a Civ.R. 12(B)(6) motion for failure to state a claim upon which relief may be granted." *Walker v. City of Toledo,* 6th Dist. Lucas No. L-15-1240, 2017-Ohio-416, ¶ 18. A reviewing court "'must presume that all factual allegations of the complaint are true and make all reasonable

inferences in favor of the nonmoving party.'" *Id.* quoting *Mitchell v. Lawson Milk Co.,* 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988).

**{¶19}** "In ruling on the motion, a court is permitted to consider both the complaint and the answer as well as any material incorporated by reference or attached as exhibits to those pleadings." *Id.* at ¶ 19. In doing so, the court must construe the material allegations in the complaint, with all reasonable inferences drawn therefrom, as true and in favor of the non-moving party. A court granting the motion must find that the plaintiff can prove no set of facts in support of the claims that would entitle him or her to relief. *Id.* quoting *Frazier v. Kent,* 11th Dist. Portage Nos. 2004-P-0077, 2004-P-0096, 2005-Ohio-5413, ¶ 14.

**{¶20}** "Because a Civ.R. 12(C) motion tests the legal basis for the claims asserted in a complaint, our standard of review is *de novo.*" *Id.* at ¶ 20.

*Abatement Ruling*

**{¶21}** Initially, Appellant attacks the actions of the City (through SERVPRO) in removing the flooring, drywall, countertops, appliances and personal property (in a locked shed) from her real property. Appellant states that the burden was on the City to prove that the items on her property constituted a public nuisance and their removal was necessary for the abatement of such nuisance. In support of her argument, Appellant directs us to a series of decisions rendered by the Second District Court of Appeals in *City of Englewood v. Turner*. *Englewood v. Turner,*

178 Ohio App.3d 179, 2008-Ohio-4637, 897 N.E.2d 213. *See also, Englewood v. Turner,* 168 Ohio App.3d 41, 2006-Ohio-2667, 858 N.E.2d 431; *Turner v. Englewood,* 191 Ohio App.3d 1, 2010-Ohio-5881, 944 N.E.2d 731. In these cases, the Second District Court ruled that the property owner was entitled to dispute the lien on her property (for demolition expenses) by filing a request for declaratory judgment, pursuant to R.C. 715.261. *Id.* at ¶ 55. *See also, Englewood v. Turner, supra*; *Turner v. Englewood, supra*. However, we find Appellant's case is distinguishable from the *Turner* cases. In *Turner,* the Second District found that "there ha[d] never been a judicial determination of a public nuisance, nor did Turner have an opportunity to be heard at an administrative level with a judicial review of whether a public nuisance existed." *Id.* at ¶ 54. To the contrary, in the case before us, there was a judicial determination (by way of default judgment) finding Appellant's property to be a nuisance. Thus, because Appellant had an opportunity to be heard at the trial court level to dispute whether her property was a nuisance and failed to do so, *Turner* is factually distinguishable to the case before us.

{¶22} Moreover, Appellant could have appealed the judgment of the trial court entry in case number 2011-CV-0278 to present this argument but failed to do so. As such, since "[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action," Appellant may not raise this

issue now on appeal. *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 1995-Ohio-331, 653 N.E.2d 226 (1995)

*Political Immunity Ruling*

{¶23} Next, in her second assignment of error, Appellant asserts that the trial court erred in its determination that the City was a political subdivision performing a governmental function, and as such, was immune from tort damages.

{¶24} The Political Subdivision Tort Liability Act, codified in R.C. Chapter 2744, governs political subdivision liability and immunity. *See generally, Vacha v. N. Ridgeville,* 136 Ohio St.3d 199, 2013-Ohio-3020, 992 N.E.2d 1126, ¶ 12. In Ohio, courts apply a three-tiered analysis to determine whether a political subdivision is entitled to immunity under R.C. Chapter 2744. *State ex rel. Rohrs. v. Germann,* 3rd Dist. Henry No. 7-12-21, 2013-Ohio-2497, ¶ 28. "First, the court must determine whether the entity claiming immunity is a political subdivision and whether the alleged harm occurred in connection with either a governmental or a proprietary function." R.C. 2744.02(A)(1); *Brady v. Bucyrus Police Dept.,* 194 Ohio App.3d 574, 2011-Ohio-2460, 957 N.E.2d 339, ¶ 44 (3rd Dist.). "In the second tier of analysis, R.C. 2744.02(B) provides five exceptions that may lift the broad immunity provided for in R.C. 2744.02(A)." *Jones v. Delaware City School Dist. Bd. of Edn.,* 2013-Ohio-3907, 995 N.E.2d 1252, ¶ 19 (5th Dist.). If an exception exists under the second tier of analysis, "'immunity can be reinstated if

the political subdivision can successfully argue that any of the defenses contained in R.C. 2744.03 applies,'" under the third tier of analysis. *McNamara v. Marion Popcorn Festival,* 2012-Ohio-5578, 983 N.E.2d 818, ¶ 21 (3rd Dist.) quoting *Hortman v. City of Miamisburg,* 110 Ohio St.3d 194, 2006-Ohio-4251, 852 N.E.2d 716, ¶ 12.

**{¶25}** However, rather than present us with a three-tiered argument (to dispute that the City was a political subdivision entitled to immunity under R.C. Chapter 2744), Appellant again directs us to the trial court's original judgment entry (in case number 2011-CV-0278) to dispute what the judgment entry authorized. As we stated above, Appellant's attempt to raise issues now that should have been raised upon a direct appeal are barred by *res judicata*.

**{¶26}** Nevertheless, *assuming arguendo*, that Appellant's second assignment is not barred by the doctrine of *res judicata,* we find Appellant's argument is without merit. As a general rule, political subdivisions are not liable in damages when the alleged harm occurs in connection with either a governmental or proprietary function. *Brady, supra*. R.C. 2744.01(F) defines a "political subdivision" as "a municipal corporation, township, county, school district, or other body corporate and politic responsible for governmental activities in a geographic area smaller than that of the state." R.C. 2744.01. Here, it is undisputed that the City meets the statutory definition of a "political subdivision." Furthermore, it is well-settled that

abating a nuisance is a governmental function. *See, City of Mansfield v. Brister,* 76 Ohio St. 270, 81 N.E. 631 (1907), paragraph three of the syllabus (holding that "to cause any nuisance to be abated is governmental" in nature). Thus, the City meets the criteria in the first prong of analysis to establish political subdivision immunity.

{¶27} However, the City's general grant of immunity could be removed if an exception exists under R.C. 2744.02(B). R.C. 2744.02(B) provides:

(B)  Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:

(1)  Except as otherwise provided in this division, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent operation of any motor vehicle by their employees when the employees are engaged within the scope of their employment and authority. The following are full defenses to that liability:

(a)  A member of a municipal corporation police department or any other police agency was operating a motor vehicle while responding to an emergency call and the operation of the vehicle did not constitute willful or wanton misconduct;

(b)  A member of a municipal corporation fire department or any other firefighting agency was operating a motor vehicle while engaged in duty at a fire, proceeding toward a place where a fire is in progress or is believed to be in progress, or answering any other emergency alarm and the operation of

-15-

the vehicle did not constitute willful or wanton misconduct;

(c) A member of an emergency medical service owned or operated by a political subdivision was operating a motor vehicle while responding to or completing a call for emergency medical care or treatment, the member was holding a valid commercial driver's license issued pursuant to Chapter 4506. or a driver's license issued pursuant to Chapter 4507. of the Revised Code, the operation of the vehicle did not constitute willful or wanton misconduct, and the operation complies with the precautions of section 4511.03 of the Revised Code.

(2) Except as otherwise provided in sections 3314.07 and 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions.

(3) Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads, except that it is a full defense to that liability, when a bridge within a municipal corporation is involved, that the municipal corporation does not have the responsibility for maintaining or inspecting the bridge.

(4) Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in

connection with the performance of a governmental function, including, but not limited to, office buildings and courthouses, but not including jails, places of juvenile detention, workhouses, or any other detention facility, as defined in section 2921.01 of the Revised Code.

(5) In addition to the circumstances described in divisions (B)(1) to (4) of this section, a political subdivision is liable for injury, death, or loss to person or property when civil liability is expressly imposed upon the political subdivision by a section of the Revised Code, including, but not limited to, sections 2743.02 and 5591.37 of the Revised Code. Civil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon a political subdivision, because that section provides for a criminal penalty, because of a general authorization in that section that a political subdivision may sue and be sued, or because that section uses the term "shall" in a provision pertaining to a political subdivision.

R.C. 2744.02(B).

{¶28} In our review of the listed exceptions to governmental immunity provided in R.C. 2744.02(B), we find that no acceptable immunity exception exists for the nuisance abatement in Appellant's case. *See generally, Leath v. Cleveland*, 8th Dist. Cuyahoga No. 102715, 2016-Ohio-105, ¶ 25 (holding that "actions in tort that have come to be termed a claim for "wrongful demolition" generally are barred by political subdivision immunity.").

{¶29} Accordingly, in our *de novo* review of the record, we find that the City was a political subdivision engaged in a governmental function, and that no

exception exists (under R.C. 2744.20) to remove the City's general grant of immunity. And, because the record fails to demonstrate that the City's immunity was removed by an exception pursuant to R.C. 2744.02(B), we conclude our analysis without the need to address the third tier of the political subdivision immunity test.

{¶30} Thus, we find that the trial court did not commit error in granting the City's motion for judgment on the pleadings on the abatement and immunity issues. Accordingly, Appellant's first and second assignments of error are overruled.

*Appellant's Third, Fourth, and Fifth Assignments of Error*

{¶31} Since Appellant's third, fourth, and fifth assignments of error address the trial court's ruling on summary judgment, we elect to address these assignments of error together. And, for the reasons that follow, we overrule Appellant's third, fourth, and fifth assignments of error in their entirety.

*Standard of Review*

{¶32} An appellate court reviews a trial court's decision on a motion for summary judgment *de novo*. *Hancock Fed. Credit Union v. Coppus,* 2015-Ohio-5312, 54 N.E.3d 806, ¶ 15 (3rd Dist.). Trial courts may grant a motion for summary judgment when "(1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion and that

conclusion is adverse to the party against whom the motion for summary judgment is made." *Hamilton v. Hector,* 117 Ohio App.3d 816, 819, 691 N.E.2d 745, 747 (3rd Dist.1997). The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Dresher v. Burt,* 75 Ohio St.3d 280, 292-93, 1996-Ohio-107, 662 N.E.2d 264. Additionally, "'upon appeal from summary judgment, the reviewing court should look at the record in the light most favorable to the party opposing the motion.'" *Hector, supra* quoting *Campbell v. Hosp. Motor Inns, Inc.,* 24 Ohio St.3d 54, 58, 493 N.E.2d 239 (1986). Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E).

*City's Compliance with the Prior Court Order Analysis*

**{¶33}** Appellant initially argues that the abatement order did not authorize the City to take the actions it took to abate the nuisance on Appellant's property. Appellant further argues that it was the City's burden to prove that Appellant's property was a public nuisance and that its clean up was reasonably necessary to abate the nuisance. In support of this argument, Appellant again directs us to Second District's decision in *City of Englewood v. Turner, supra.*

**{¶34}** However, as we have previously discussed, *Turner* is distinguishable from the case before us because there was a judicial proceeding determining that Appellant's property constituted a public nuisance.[3]  Specifically, the trial court's abatement order (in case number 2011-CV-0278) provided, in its relevant part, as follows:

> IT IS, FURTHER, ORDERED, that the Plaintiffs, Union County Board of Health and the City of Marysville, Ohio, be granted judgment by default against the Defendants, Charles A. Oliver and Betty J. Oliver, *and the Court declares that a nuisance exists upon the property located at 325 S Plum Street, Marysville, Ohio, 43040.*

> IT IS, FURTHER, ORDERED, that the Defendants, Charles A. Oliver and Betty J. Oliver, are hereby permanently enjoined from maintaining a nuisance upon their real estate located at 325 South Plum Street, Marysville, Ohio and *the Defendants are Ordered to cease violating the Ohio Revised Code and the Ohio Administrative Code in relation to maintaining a nuisance in and upon the real estate* at 325 South Plum Street, Marysville, Ohio, 43040.

> IT IS, FURTHER, ORDERED, that the Defendants, Charles A. Oliver and Betty J. Oliver, shall cause the real estate located at 325 South Plum Street, Marysville, Ohio, 43040 *to be cleaned up both inside and outside the home* and that all trash, debris, excess material and/or junk be removed from the premises within the next thirty (30) days.

> IT IS, FURTHER, ORDERED, that the Defendants, Charles A. Oliver and Betty J. Oliver, are hereby permanently enjoined and shall cease maintaining an open dump as prohibited by the Ohio Administrative Code;

> IT IS, FURTHER, ORDERED, that, should the Defendant's [sic], Charles A. Oliver and Betty J. Oliver, *fail to clean up the inside and outside of the property* located at 325 South Plum Street, Marysville,

---

[3] *See,* Union County Common Pleas Court case number 2011-CV-0278.

Ohio, make necessary repairs, and clean up all trash, debris, and junk, that, in that event, that the Plaintiff's [sic], Union County Board of Health and the City of Marysville, Ohio, *shall take all necessary steps and/or actions to abate the nuisance located at 325 South Plum Street*, Marysville, Ohio, and the Defendants, Charles A. Oliver and Betty J. Oliver, shall be fully liable, jointly and severally, to the Plaintiffs for the total amount of the costs incurred *in abating the nuisance located in and upon the real estate* located at 325 South Plum Street, Marysville, Ohio. In addition, should the Plaintiffs incur any costs for the abatement of the nuisance at 325 South Plum Street, Marysville, Ohio, *all said costs shall be certified to the Union County Auditor for inclusion with the real estate taxes due upon the real estate*.

(Emphasis added.) (Doc. No. 1, Ex. A)

**{¶35}** Thus, Appellant's attempts to analogize the facts of her case with *Turner* are misplaced. In the case before us, the abatement order was issued in a judicial proceeding that specifically found Appellant's property to be a nuisance. The order further authorized the City to take all necessary steps to abate that nuisance.

**{¶36}** Moreover, it is clear to us that since the Appellant failed to clean up her property, or contest the nuisance ruling in the trial court or upon appeal, she has waived her opportunity to argue whether or not a nuisance existed. Furthermore, the record reveals that Appellant entered into an agreement with the City that permitted it to enter her property and to *remove her property* prior to the City's

hiring of SERVPRO. Accordingly, we find Appellant's arguments under this portion of her assignments not well taken.[4]

*Tax Lien Analysis*

**{¶37}** Lastly, Appellant argues that the tax lien assessed to her real estate taxes was invalid. Initially, we note that the trial court's 2011 judgment entry specifically authorized the City to certify its costs (of abating Appellant's nuisance) to the Union County Auditor and be assessed to her real estate taxes. (*See,* Doc. No. 1, Ex. A).

**{¶38}** However, Appellant argues that the City failed to submit a valid certification of costs in accordance with 715.261(B). Specifically, Appellant contends that because the City did not certify the abatement costs within one year from the date the costs were incurred, the lien placed on the property was invalid, pursuant to R.C. 715.261(B). We disagree.

R.C. 715.261(B) states, in its pertinent part:

(B) A municipal corporation or its agent pursuant to division (E) of this section may collect the total cost of abatement activities by any of the methods prescribed in division (B)(1), (2), or (3) of this section.

(1) For each abatement activity in which costs are incurred, the clerk of the legislative authority of the municipal corporation or its agent pursuant to division (E) of this section may certify the total costs of each

---

[4] We also note that Appellant argues that the trial court's prior order only authorized the City to act on the *outside* of the home, and not within the residence. We are not persuaded as the plain language of the trial court's 2011 order specifically orders Appellant and/or the City to clean up the *inside and outside* of the property. (Doc. No. 1, Ex. A).

abatement activity, together with the parcel number or another proper description of the lands on which the abatement activity occurred, the date the costs were incurred for each abatement activity, and the name of the owner of record at the time the costs were incurred for each abatement activity, to the county auditor who shall place the costs as a charge upon the tax list and duplicate. The costs are a lien upon such lands from and after the date the costs were incurred. The costs shall be collected as other taxes and returned to the municipal corporation or its agent pursuant to division (E) of this section, as directed by the clerk of the legislative authority in the certification of the total costs or in an affidavit from the agent delivered to the county auditor or county treasurer. *The placement of the costs on the tax list and duplicate relates back to, and is effective in priority, as of the date the costs were incurred, provided that the municipal corporation or its agent pursuant to division (E) of this section certifies the total costs within one year from the date the costs were incurred.*

(2)   If a lien placed on a parcel of land pursuant to this division is extinguished as provided in division (H) of this section, a municipal corporation may pursue the remedy available under division (B)(2) of this section to recoup the costs incurred with respect to that parcel from any person that held title to the parcel at the time the costs were incurred.

(3)   The municipal corporation or its agent pursuant to division (E) of this section may commence a civil action to recover the total costs from the person that held title to the parcel at the time the costs were incurred.

(4)   A municipal corporation or its agent pursuant to division (E) of this section may file a lien on a parcel of land for the total costs incurred under this section with respect to the parcel by filing a written affidavit with the county recorder of the county in which the parcel is located that states the parcel number, the total costs

-23-

incurred with respect to the parcel, and the date such costs were incurred. The municipal corporation or its agent may pursue a foreclosure action to enforce the lien in a court of competent jurisdiction or, pursuant to sections 323.65 to 323.79 of the Revised Code, with the board of revision. The municipal corporation or its agent may elect to acquire the parcel by indicating such an election in the complaint for foreclosure or in an amended complaint. Upon the entry of a decree of foreclosure, the county sheriff shall advertise and offer the property for sale on at least one occasion. The minimum bid with regard to the sale of the foreclosed property shall equal the sum of the taxes, penalties, interest, costs, and assessments due and payable on the property, the total costs incurred by the municipal corporation or its agent with respect to the property, and any associated court costs and interest as authorized by law. An owner of the property may redeem the property by paying the minimum bid within ten days after the entry of the decree of foreclosure. If an owner fails to so redeem the property, and if the parcel is not sold for want of a minimum bid, the property shall be disposed of as follows:

> (a)   If the municipal corporation or its agent elects to acquire the property, the parcel shall be transferred to the municipal corporation or its agent as if the property were transferred by all owners in title to the municipal corporation or its agent in lieu of foreclosure as provided in section 5722.10 of the Revised Code;

> (b)   If the municipal corporation or its agent does not elect to acquire the property, the parcel shall be forfeited to the state or to a political subdivision or school district as provided in Chapter 5723. of the Revised Code.

> (c) When a municipal corporation or its agent acquires property as provided in this division, the property shall not be subject to foreclosure or forfeiture under section 323.25 or Chapter 5721. or 5723. of the Revised Code, and any lien on the property for costs incurred under this section or for any unpaid taxes, penalties, interest, charges, or assessments shall be extinguished.

(Emphasis added). R.C. 715.261(B). In our review of Appellant's argument, we find the plain language of R.C. 715.261(B) concerns the *priority* of a tax lien, not the validity. While Appellant asserts that R.C. 715.261(B) mandates that a tax lien be certified within one (1) year to be *valid*, we find no such provision therein. Rather, R.C. 715.26(B) addresses tax liens and validity as follows:

> (B) Provide for the inspection of buildings or other structures and for the removal and repair of insecure, unsafe, or structurally defective buildings or other structures under this section or section 715.261 of the Revised Code. At least thirty days prior to the removal or repair of any insecure, unsafe, or structurally defective building, the municipal corporation, or its agent pursuant to an agreement entered into under division (E) of section 715.261 of the Revised Code, shall give notice by certified mail of its intention with respect to such removal or repair to the holders of legal or equitable liens of record upon the real property on which such building is located and to owners of record of such property. The owners of record of such property or the holders of liens of record upon such property may enter into an agreement with the municipal corporation, or a county land reutilization corporation organized under Chapter 1724. of the Revised Code that is serving as the municipal corporation's agent, to perform the removal or repair of the insecure, unsafe, or structurally defective building. If an emergency exists, as determined by the municipal corporation, notice may be given other than by certified mail and less than thirty days prior to such removal or repair. *If for any reason notice is not given, the lien provided for in section 715.*

-25-

> *261 of the Revised Code as a result of such removal or repair is valid but shall be subordinate to any liens of prior record.* If notice is provided in accordance with this section, a lien under section 715.261 of the Revised Code for such removal or repair is effective on the date the municipal corporation or county land reutilization corporation incurred expenses in such removal or repair.

(Emphasis added). R.C. 715.26(B). Accordingly, pursuant to R.C. 715.26 and R.C. 715.261, we find that if notice for removal was not provided to an owner, the lien (for such costs for removal or repair) is valid but its priority will be subordinated to any prior liens of record. In the case before us, the record is void as to whether or not other liens existed on the property. Thus, we find Appellant's reliance upon and interpretation of R.C. 715.261 misplaced.

**{¶39}** Nonetheless, Appellant directs this Court to *Thomas v. Bauschlinger*, to support her contention that because the lien was not certified within one year from the date the costs were incurred, the assessment was improper and the lien is invalid. *Thomas v. Bauschlinger,* 9th Dist. Summit No. 25868, 2011-Ohio-4940, ¶ 9. However, unlike the city (plaintiff) in *Bauschlinger,* the City (plaintiff) in this case certified its costs to the Auditor pursuant to the judgment entry issued by the trial court, *not pursuant to R.C. 715.261*, as Appellant claims. There is nothing in *Bauschlinger* to indicate that there was a prior judicial determination that a nuisance existed on the assessed property, nor that there was a judgment entry authorizing the city in *Bauschlinger* to certify the costs of abating the nuisance to the county auditor for assessment. Thus, *Bauschlinger* is distinguishable from the case *sub*

-26-

*judice* because City pursued its abatement costs in accordance with the trial court's 2011 order.

**{¶40}** We also find Appellant's reliance on *Atwater Township Board of Trustees v. Welling* misplaced. In *Welling,* the record was void of any certification of abatement costs by the Township. *Atwater Twp. Bd. Of Trustees v. Welling,* 184 Ohio App.3d 201, 2009-Ohio-4451, 920 N.E.2d 183, ¶ 47. While here, Appellant does not dispute that the City certified its costs, but rather disputes whether the costs were certified within the proper time frame, under R.C. 715.261(B). And, because we have already determined that R.C. 715.261(B) only affects the priority of liens, not the validity of liens, *Welling* is factually inapposite from the case before us.

**{¶41}** Finally, Appellant asserts that the trial court should have applied R.C. 715.261(B) at the time the City certified its abatement costs to the county auditor, not at the time the City incurred them. We note, for the reasons stated above, that we are not persuaded by Appellant's argument (regarding R.C. 715.261) since the trial court's original order (in case number 2011-CV-0278) authorized the City to certify its costs of abatement to the county auditor for assessment.

**{¶42}** Nonetheless, even if R.C. 715.261 were applicable to the City's actions, Appellant's argument regarding the validity of the tax lien is without merit. We are aware that the Ohio legislature amended R.C. 715.261 in 2014 and that Appellant contends that the current version (as listed above) should apply to the

City's certification process, not the version that was in effect at the time the City incurred its costs. However, Appellant's argument ignores the plain language of *both* the current and former versions of R.C. 715.261, which establishes that "[t]he placement of the costs on the tax list and duplicate relates back to, and is effective in priority, *as of the date the costs were incurred.*" R.C. 715.261(B). Thus, neither code version indicates that the date of certification is the controlling date for application. Since the record before us demonstrates that the City complied with the certification requirements as of the date the costs were incurred, we are unpersuaded by Appellant's argument.

{¶43} Thus, in our *de novo* review, we find that no genuine issue of material fact is present with regards to the certification of costs and the City was entitled to judgment as a matter of law. Further, reasonable minds can come but to one conclusion, and that conclusion is adverse to the Appellant regarding the validity of the City's tax lien and compliance with the prior trial court order.

{¶44} Accordingly, we find Appellant's arguments unpersuasive and we overrule Appellant's third, fourth, and fifth assignments of error.

### *Conclusion*

{¶45} Having found no error prejudicial to the Appellant herein in the particulars assigned and argued, we overrule Appellant's first, second, third, fourth,

and fifth assignments of error and affirm the judgment of the Union County Common Pleas Court.

***Judgment Affirmed***

**SHAW and PRESTON, J.J., concur.**

**/jlr**