OPINION
{¶ 1} Plaintiffs-appellants, Charles and Emily States, appeal the decision of the Trumbull County Court of Common Pleas, entering judgment in favor of defendants-appellees, Phyllis G. and David W. Wing. For the following reasons, we affirm the decision of the court below.
 {¶ 2} On April 28, 2003, the States executed a Purchase Agreement to buy a home on Ridge Road in Cortland, Ohio, from the Wings for $110,000. According to the terms of the agreement, the States agreed "to purchase the property in its present condition and acknowledge that they have examined all property involved * * * and that they have signed this agreement as a result of said examination * * * and not upon any representations made by Owner. The [States] further acknowledge that the Owner is making no representations, express or implied warranties as to the condition or working order of the property * * * and that the [States are] purchasing this property `as is'." The purchase was completed on May 6, 2003, with the execution of the property deed.
 {¶ 3} On August 19, 2004, the States filed a multiple-count complaint against the Wings after water was found to be leaking into the basement when it rained. The complaint raised claims of fraudulent misrepresentation and/or concealment and sought declaratory judgment, rescission, and compensatory and punitive damages.
 {¶ 4} The Wings moved for summary judgment on the grounds that there was no misrepresentation regarding water leakage into the basement. The following facts were proffered in the Wings' motion and the States' brief in opposition.
 {¶ 5} The Wings purchased the house in 1971 and lived in it continuously until July 2002. The Wings experienced problems with water seepage in the basement shortly after purchasing the house. The seepage was blocked by the application of hydraulic cement. Again, in 1995 and/or 1996, the Wings began to have problems with water leaking from the northeast and northwest corners of the basement. The leaking continued sporadically over the next seven to eight years.
 {¶ 6} Kim Calvin, who had an interest in buying the Wings' home, inspected the basement in May 2002. She testified by affidavit that carpeting on the floor of the basement was pulled back in the area of the northwest corner and that the floor and walls were "unpainted and damp and discolored by the accumulation of moisture."
 {¶ 7} According to the affidavit testimony of David Wing, the areas of the basement damaged by water leakage were repaired "in the late summer/early fall of 2002" by the application of hydraulic cement and dry lock paint. Thereafter, the Wings testified that there was no further water leakage in the basement until the house sold in May 2003.
 {¶ 8} The States inspected the basement on three occasions prior to purchasing the house. On their first inspection, the States observed that portions of the basement wall had been patched with a smooth material and that all the walls had been freshly painted. On this occasion, Emily States asked David Wing about the patching.
 {¶ 9} According to Emily's deposition testimony, David replied that "he had had some seepage." Emily then asked "if he had any trouble now, and he said no." David further stated that he had applied the hydraulic cement because of the seepage. Emily further testified as follows on these points:
 {¶ 10} "Attorney: Do you have any reason to believe that it wasn't true that he had seepage? Do you believe that?
 {¶ 11} "Emily: No, I believed he had seepage.
 {¶ 12} "Attorney: Do you believe that he put it up, the dry lock paint and hydraulic cement, put it up to stop the seepage?
 {¶ 13} "Emily: Yes, that's the thought I got.
 {¶ 14} "* * *
 {¶ 15} "Attorney: And you not only believed it then, but you believe it now, that he did do that to try to stop the seepage?
 {¶ 16} "Emily: Yes."
 {¶ 17} In response to the Wings' request for admissions, the States' admitted that they were advised that "`during the past year hydrolic [sic] cement was applied to the bottom portion of the basement walls' and that Mr. Wing orally stated that there had been no seepage of water into the basement since he had applied hydrolic [sic] cement and DryLoc paint to the basement walls."
 {¶ 18} David Wing testified by deposition that he informed the States of the leakage beginning in 1995/1996 during their inspection of the basement. The Residential Property Disclosure Form filled out by the Wings prior to the sale stated that they did not "know of any current water leakage, water accumulation, excess dampness or other defects with the basement." (Underlining added by Phyllis Wing). The Disclosure Form also required to the Wings to report "any repairs, alterations or modifications to the property or other attempts to control any water or dampness problems in the basement * * * since owning the property (but not longer than the past 5 years)." The Wings' response reads as follows: "During the past year hydrolic [sic] cement was applied to the bottom portion of the wall and Dry Loc cement paint was applied to the entire perimeter of the wall."
 {¶ 19} In an affidavit submitted in their response to the Wings' motion for summary judgment, the States testified they were never informed "that water had been leaking into the basement from time to time during the six or seven year period prior to the late summer or fall of 2002." The States also testified by affidavit that David Wing represented to them that the hydraulic cement and dry lock paint had been applied in response to the seepage occurring in the 1970s. The States also testified by affidavit that they specifically inquired of David whether there was any water "coming through the walls" and David responded, "no."
 {¶ 20} On November 16, 2005, the trial court granted summary judgment in favor of the Wings. The court's judgment reads: "In this case, the condition of the basement was discoverable upon reasonable inspection, the purchasers had the opportunity to examine the premises, and the sellers did not commit fraud. Plaintiffs were on notice that they were buying a house with a basement that at one time leaked. Defendants told Plaintiffs that at one time water seeped into the basement. Despite Defendants' disclosures * * * the Plaintiffs chose to purchase the house as is. Based upon these facts, Plaintiffs have no case against Defendants for fraudulent misrepresentation." This appeal timely follows.
 {¶ 21} On appeal, the Wings raise the following assignments of error.
 {¶ 22} "[1.] The court below erred in granting summary judgment in favor of Appellees upon Appellants' claims of fraudulent misrepresentation.
 {¶ 23} "[2.] The court below erred in granting summary judgment in favor of Appellees upon Appellants' claim of fraudulent concealment."
 {¶ 24} Pursuant to Civ.R. 56(C), summary judgment is proper when (1) the evidence shows "that there is no genuine issue as to any material fact" to be litigated, (2) "[t]he moving party is entitled to judgment as a matter of law," and (3) "it appears from the evidence * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence * * * construed most strongly in the party's favor." A trial court's decision to grant summary judgment is reviewed by an appellate court under a de novo standard of review. Grafton v. Ohio Edison Co.,77 Ohio St.3d 102, 105, 1996-Ohio-336. A de novo review requires the appellate court to conduct an independent review of the evidence before the trial court without deference to the trial court's decision.Brown v. Cty. Commrs. of Scioto Cty. (1993),87 Ohio App.3d 704, 711 (citation omitted).
 {¶ 25} The elements of a claim for fraudulent misrepresentation are essentially the same as for fraudulent concealment and are as follows: "(1) a representation or, when there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) justifiable reliance on the representation or concealment, and (6) an injury proximately caused by that reliance." Gentile v.Ristas, 160 Ohio App.3d 765, 2005-Ohio-2197, at ¶ 51 (citations omitted). Cf. Waleszewski v. Angstadt, 11th Dist. No. 2002-L-113, 2004-Ohio-335, at ¶ 13 (citation omitted), andChamar v. Schivitz, 11th Dist. No. 2002-L-181, 2004-Ohio-1957, at ¶ 13 (citation omitted).
 {¶ 26} Both claims may be defeated by the defense of caveat emptor. "The doctrine of caveat emptor precludes recovery in an action by the purchaser for a structural defect in real estate where (1) the condition complained of is open to observation or discoverable upon reasonable inspection, (2) the purchaser had the unimpeded opportunity to examine the premises, and (3) there is no fraud on the part of the vendor." Layman v. Binns (1988),35 Ohio St.3d 176, at syllabus.
 {¶ 27} In the present case, the trial court properly applied the doctrine of caveat emptor to deny the States' claims. The condition of water leakage in the basement was discoverable upon reasonable inspection. The evidence is undisputed that the States observed the patching on the walls and the recent painting and made the appropriate inquiries. The States argue that these repairs had the effect of concealing the evidence of water damage. The Wings themselves testified that, in part, they sought to improve the appearance of the basement by repairing the damage. However, there is no indication that the Wings sought to conceal the evidence of the repair work, which they admitted to having performed both verbally and in the Residential Property Disclosure Form. The repair work was open to observation and, therefore, served to put the States on notice of potential water damage.
 {¶ 28} The evidence is also undisputed that the States had the unimpeded opportunity to examine the premises. The States inspected the premises on three occasions, the last time being April 2003, less than a month prior to the execution of the Purchase Agreement.
 {¶ 29} The States allege two instances of fraud by the Wings that preclude the application of caveat emptor. The first is David Wings' response to their direct inquiry about water leaking into the basement. According to the States' affidavit, David replied that the only problems with water seepage in the basement had occurred twenty years previously. David testified in his deposition that he informed the States that the basement had been leaking on occasion for the previous seven or eight years, but that the leaking ceased after the recent applications of waterproofing cement and paint. The States maintain that this discrepancy in testimony creates a genuine issue of material facts regarding fraud. We disagree.
 {¶ 30} The States' affidavit testimony not only contradicts David's deposition testimony but also Emily States' previous deposition testimony. In her deposition, Emily unequivocally states her belief that waterproofing cement and paint had been applied "to try to stop the seepage," not, as the affidavit attests, to repair damage that had occurred twenty years previously. Nowhere in her deposition does Emily indicate that David made reference to water damage occurring twenty years previously. All the testimony in the record confirms that David had applied the cement and paint some time between Kim Calvin's inspection of the home in May 2002 and the States' purchase in April 2003. If the cement and paint were applied to stop the seepage, the seepage itself must have been relatively recent. The only reasonable interpretation of Emily's deposition testimony is that she and her husband were aware of the seepage.
 {¶ 31} The States' affidavit submitted in response to the Wings' motion for summary judgment does not create a genuine issue of material fact, although it contradicts David's deposition testimony. It is well-settled in this and other appellate districts "that a party may not create a factual issue by filing an affidavit contradicting her earlier testimony."Konet v. Mark Glassman, Inc., 11th Dist. No. 2004-L-151,2005-Ohio-5280, at ¶ 29; Spatar v. Avon Oaks Ballroom, 11th Dist. No. 2001-T-0059, 2002-Ohio-2443, at ¶¶ 20-21; Pinchot v.Mahoning Cty. Sheriff's Dept., 164 Ohio App.3d 718,2005-Ohio-6593, at ¶ 25 (citing several Eleventh District appellate decisions) ("[g]enerally, a nonmoving party cannot defeat a motion for summary judgment by submitting an affidavit which, without good explanation, contradicts that party's previous deposition testimony"). The States have made no attempt to explain the discrepancy between the affidavit and the deposition testimony.
 {¶ 32} Therefore, there is no competent evidence that David Wing committed fraud by misrepresenting the condition of the basement and its susceptibility to water leakage.
 {¶ 33} The States also allege fraud based on the Residential Property Disclosure Form. On this form, the Wings indicated that they did not "know of any current water leakage" and that within the past five years hydraulic cement and dry lock paint had been applied to portions of the basement. There is nothing misleading or fraudulent about the information provided by the Wings. The uncontradicted testimony is that there was no water leakage since David performed the repair work in 2002. Phyllis Wing emphasized that there was no "current" leakage, i.e. since the repair work, by underlining those words herself. The Wings admitted the recent repair work, which Emily, according to her deposition, understood to have been performed was to stop water from leaking into the basement. Nothing in the Disclosure Form contradicts this understanding.
 {¶ 34} For the foregoing reasons, the States have failed to raise a genuine issue of material fact regarding the applicability of the doctrine of caveat emptor to defeat their claims for fraudulent misrepresentation and concealment. The two assignments of error are without merit. The decision of the Trumbull County Court of Common Pleas, entering judgment in favor of the Wings, is affirmed.
Rice, J., O'Toole, J., concur.