[Cite as *Kaiser v. Helbig*, 2021-Ohio-887.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## UNION COUNTY

ALICIA KAISER,

    PLAINTIFF-APPELLANT,                 CASE NO. 14-20-14

    v.

HOLLY HELBIG, D.V.M., ET AL.,         O P I N I O N

    DEFENDANTS-APPELLEES.

---

**Appeal from Union County Common Pleas Court**
**Trial Court No. 2019 CV 0015**

**Judgment Affirmed in Part, Reversed in Part, and Cause Remanded**

**Date of Decision:  March 22, 2021**

---

APPEARANCES:

    *John P. Corcoran, Jr.* **for Appellant**

    *Miranda R. Powell* **for Appellees**

**ZIMMERMAN, J.**

{¶1} Plaintiff-appellant, Alicia Kaiser ("Kaiser"), appeals from the July 14, 2020 judgment of the Union County Court of Common Pleas dismissing her complaint against defendant-appellees, Holly Helbig, D.V.M. ("Dr. Helbig"), Lebanon Equine Clinic, Inc., ("LEC"), and Hawthorne Veterinary Clinic, L.L.C. ("HVC") (collectively "defendants"). For the reasons that follow, we affirm in part and reverse in part.

{¶2} The genesis of this case stems from Dr. Helbig's fitness examination of Varillus, a 14-year-old Chestnut Warmblood gelding. (Doc. No. 1). After Kaiser's daughter rode the horse in a competition, Kaiser hired Dr. Helbig to perform a fitness examination of the horse prior to purchasing the horse. (*Id.*). Once Dr. Helbig's examination concluded, Kaiser purchased the horse for $43,000.[1] (Doc. No. 5). However, approximately 4 1/2 months later, the horse was diagnosed with lameness in its front foreleg and euthanized.

{¶3} On November 8, 2018, Kaiser filed a complaint in the Franklin County Common Pleas Court against Dr. Helbig (in her professional capacity), LEC, and HVC. (Doc. No. 1). Kaiser's complaint alleged claims for negligence, breach of contract, fraudulent concealment, and fraudulent misrepresentation against the

---

[1] Prior to the fitness examination and sale, Kaiser's daughter was authorized to ride Varillus in a competition where it was alleged that Varillus was medicated to enable him to perform. (Doc. No. 1). Contemporaneous with the competition, Dr. Helbig performed the fitness examination. (*Id.*).

defendants. (*Id.*). Kaiser filed a motion to transfer venue of the matter to Union County, Ohio on the basis that Franklin County, Ohio was not the proper forum under Civ.R. 3(C). (*Id.*). The trial court granted her motion by its judgment entry journalized on December 27, 2018. (*Id.*). Thereafter, and on February 11, 2019, all defendants filed an answer to Kaiser's complaint in the Union County Common Pleas Court. (Doc. No. 4).

{¶4} On February 14, 2019, the defendants filed a motion for judgment on the pleadings under Civ.R. 12(C). (Doc. No. 5). Kaiser filed a memorandum in opposition to the defendants' motion on March 1, 2019. (Doc. No. 6). On July 14, 2020, the trial court granted defendants' motion for judgment on the pleadings as to all claims and all defendants on the basis that such claims were veterinary-malpractice claims, and thus barred by the statute of limitations. (Doc. No. 8)

{¶5} Kaiser filed a timely appeal and raises two assignments of error for our review, which we will address together. (Doc. No. 11).

### Assignment of Error No. I

**The Trial Court erred in granting the Motion for Judgment on the Pleadings as to Counts III and IV (Fraudulent Concealment And Fraudulent Misrepresentation) of the Complaint, when those claims are separate and distinct claims from the veterinary malpractice.**

### Assignment of Error No. II

**The Trial Court erred in granting the Motion for Judgment on the Pleadings based upon the equitable tolling of the statute of**

**limitations, since the original action was timely filed in the Commonwealth of Pennsylvania, and the Pennsylvania Court declined to exercise jurisdiction.**

{¶6} Kaiser argues in her first assignment of error that the trial court erred in granting defendants' judgment on the pleadings as to her claims of fraud set forth under Counts Three and Four in her complaint. Specifically, Kaiser argues that fraudulent concealment (Count Three) and misrepresentation (Count Four) are separate and independent from other claims construed by the trial court to be veterinary-malpractice claims, and thus were not controlled by the one-year statute of limitations under R.C. 2305.11(A), but rather, are governed by the five-year statute of limitations set forth in R.C. 2305.09(C). In her second assignment of error Kaiser asserts that the statute of limitations should have been equitably tolled because she filed her original action in the State of Pennsylvania, which ultimately declined to exercise personal jurisdiction. Specifically, she argues that Count One (her negligence claim) and Count Two (her breach of contract claim) should be reinstated.

*Standard of Review*

{¶7} "'A trial court reviews a Civ.R. 12(C) motion for judgment on the pleadings using the same standard of review as a Civ.R. 12(B)(6) motion for failure to state a claim upon which relief may be granted.'" *Oliver v. City of Marysville*, 3d Dist. No. 14-18-01, 2018-Ohio-1986, ¶ 18, quoting *Walker v. City of Toledo*, 6th

Dist. Lucas No. L-15-1240, 2017-Ohio-416, ¶ 18. We "'must presume that all factual allegations of the complaint are true and make all reasonable inferences in favor of the nonmoving party.'" *Id.* quoting *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192 (1988); *Frazier v. Kent*, 11th Dist. Portage Nos. 2004-P-0077, 2004-P-0096, 2005-Ohio-5413, ¶ 14.

{¶8} "'In ruling on the motion, a [trial] court is permitted to consider both the complaint and the answer as well as any material incorporated by reference or attached as exhibits to those pleadings.'" *Id.* at ¶ 19, quoting *Walker* at ¶ 19. *See also* Civ.R. 10(C) (stating that "[a] copy of any written instrument attached to a pleading is a part of the pleading for all purposes."). Not every "document attached to a pleading constitutes a Civ.R. 10(C) written instrument," however; the "'term "written instrument" in Civ.R. 10(C) has primarily been interpreted to include documents that evidence the parties' rights and obligations,'" such as negotiable instruments, leases, insurance policies, deeds and contracts. *State ex rel. Leneghan v. Husted*, 154 Ohio St.3d 60, 2018-Ohio-3361, ¶ 17, quoting *Inskeep v. Burton*, 2d Dist. Champaign No. 2007 CA 11, 2008-Ohio-1982, ¶ 17; *Greer v. Finest Auto Wholesale, Inc.*, 9th Dist. Summit No. 29358, 2020-Ohio-3951, ¶ 16, citing *Leneghan* at ¶ 17 and Civ.R. 10(C). A trial court granting the motion for judgment on the pleadings must find that the plaintiff can prove no set of facts in support of the claims that would entitle him or her to the relief sought. *Oliver* at ¶ 19, citing

*Walker* at ¶ 19, citing *Frazier* at ¶ 14. "'Because a Civ.R. 12(C) motion tests the legal basis for the claims asserted in a complaint, our standard of review is de novo.'" *Oliver* at ¶ 20, quoting *Walker* at ¶ 20 citing *Frazier* at ¶ 14, citing *State ex. rel. Midwest Pride IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 570 (1996).

*Analysis*

{¶9} We begin by addressing Kaiser's argument that the causes of action in her complaint (Counts Three and Four) stated claims in fraud that should be construed separate and independent from her veterinary-malpractice claims (Counts One and Two) and that such claims were timely filed under R.C. 2305.09(C). Importantly, Kaiser does not challenge the trial court's determination that her negligence and breach-of-contract claims set forth clear professional-negligence claims (i.e. veterinary malpractice) under Counts One and Two.

In Ohio,

> in order to establish *negligence* by a veterinarian, it must be shown that the injury complained of was caused by the doing of a particular thing that a veterinarian of ordinary skill, care and diligence would not have done under like or similar circumstances, or by the failure or omission to do some particular thing that such a veterinarian would have done under like or similar circumstances.

(Emphasis added.) *Turner v. Sinha*, 65 Ohio App.3d 30, 35 (12th Dist.1989), citing *Littleton v. Good Samaritan Hosp. & Health Ctr.*, 39 Ohio St.3d 86, 93 (1988). A veterinary-malpractice claim has similar elements to a medical-malpractice claim. To establish a veterinary-malpractice claim here Kaiser must show: (1) Dr. Helbig

had a duty to perform her examination of the horse according to the appropriate veterinary standards; (2) that Dr. Helbig breached that duty; 3) that the breach was the proximate cause of the damages; and (4) that Kaiser suffered damages. *See Peltier v. McCartan*, 3d Dist. Shelby No. 17-05-14, 2005-Ohio-3901, ¶ 9. Proximate cause is generally understood as occurring when an original act is wrongful or negligent, and in a natural and continuous sequence, produces a result that would not have taken place without the act. *See Whiting v. Ohio Dept. of Mental Health*, 141 Ohio App.3d 198, 202-203 (10th Dist.2001).

{¶10} The elements of fraud, on the other hand, are:

'(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) *made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred*, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.'

(Emphasis added.) *Burris v. Romaker*, 71 Ohio App.3d 722, 776 (3d Dist.1991), quoting *Gaines v. Preterm Cleveland, Inc.*, 33 Ohio St.3d 54, 55 (1987).

{¶11} When determining whether a claim is based in malpractice of veterinary medicine or an independent cause of action in fraud, *Gaines* is instructive. *See Gilreath v. Ohio State Univ. Veterinary Hosp.*, Ct. of Cl. No. 2001-06525-AD, 2002-Ohio-5408, ¶ 78 (determining that "[a]lthough [Gilreath's] claim is based on alleged malpractice of veterinary medicine [by Dr. Chew] as opposed to

a medical claim involving a physician/patient relationship, the court concludes the *Gaines*, *id.* standard of independent fraud assertions applies.").

{¶12} To determine whether Kaisers's claims in fraud state a separate and independent cause of action from her other claims constituting veterinary malpractice, we must undertake a review of Kaisers's complaint and the defendants' answer. However, before addressing the sufficiency of Kaiser's claims, we note that in Counts Three and Four of her complaint, Kaiser pleaded both fraudulent concealment and misrepresentation (the elements of which) are essentially the same. *Buckeye Retirement Co., LLC, Ltd. v. Busch*, 2d Dist. Greene No. 2016-CA-32, 2017-Ohio-4009, ¶ 42, citing *Gentile v. Ristas*, 10th Dist. Franklin Nos. 04AP-547, 04AP-647, and 04AP-704, 2005-Ohio-2197, ¶ 51, and *States v. Wing*, 11th Dist. Trumbull No. 2005-T-0145, 2006-Ohio-4423, ¶ 25. "'Fraud may be committed not only by affirmative misrepresentation or concealment, but also by nondisclosure when there is a duty under the circumstances to disclose.'" *Id.*, quoting *Gentile* at ¶ 51, citing *Parahoo v. Mancini*, 10th Dist. Franklin No. 97APE08-1071, 1998 WL 180539 (Apr. 14, 1998). Nevertheless, we will address Kaiser's claims under Count Three and Count Four, separately.

*Count Three:  Fraudulent Concealment*

**{¶13}** In her fraudulent-concealment claim (under paragraph 56), Kaiser asserts that Dr. Helbig was her agent at the time of the veterinary examination and concealed (from Kaiser) the following:

(a)   Medicating Varillus such that he was able to perform adequately during the Horse Show competition, and when ridden by Daughter;

(b)   Not releasing the PPE form, blood test results, or radiographs to Ms. Kaiser until after the sale was completed;

(c)   Representing that Dr. Helbig's oral assertions were all that was necessary to proceed and how these transaction [sic] regularly occur, when all results should be provided before proceeding;

(d)   Withholding Varillus' medical record and/or history from Ms. Kaiser so that she would not be aware of his Medical Conditions;

(e)   Using onion shoes on Varillus' front hooves to conceal the injuries and damage to his front left hoof and the severity of "high-low syndrome" Varillus suffered from; and

(f)   Recommending that Ms. Kaiser keep Varillus in his current shoes because "that's how he's always been shod" when Defendants knew that doing so would keep the true extent of Varillus' Medical Conditions concealed from Ms. Kaiser.

(Doc. No. 1).  Importantly, in this claim, Kaiser did not aver that Dr. Helbig had knowledge or intent to mislead Kaiser (i.e., actual knowledge).  (*Id.*).  Moreover, based upon our review of the complaint, we cannot infer that knowledge or intent to mislead Kaiser was pleaded.  (*See id.*).  *See* Civ.R. 9(B).  Further, Kaiser incorporated paragraphs 1-53 in paragraph 54, wherein she averred negligence and

-9-

breach of contract. (*Id.*). Thus, we conclude that Kaiser's fraudulent-concealment claim under Count Three is insufficiently pleaded as to the required scienter element of fraud. Accordingly, we cannot reach the conclusion that the fraud alleged under Count Three states a separate and independent cause of action from the claims set forth in Counts One and Two.

*Count Four: Fraudulent Misrepresentation*

{¶14} We now turn to whether Kaiser sufficiently pleaded fraudulent-misrepresentation in Count Four to survive the trial court's ruling. Relying on the same underlying allegations as to her fraudulent-concealment claim in paragraph 56, Kaiser asserts in paragraph 62 that Dr. Helbig made representations or statements in regards to the following:

> (a)  Representing Varillus to be healthy and suitable for the Intended Uses by Seller's Agent sending Ms. Cafaro old videos of Varillus performing in ways Defendants knew he could no longer perform;
>
> (b)  Stating that Varillus had never been lame before;
>
> (c)  Stating that Varillus had no medical conditions or ailments that would affect his suitability for the Intended Uses;
>
> (d)  Stating that there was no specific reason for the manner in which Varillus was shod, when in reality the onion shoes were used to covered [sic] up severe defects in Varillus' front left hoof;
>
> (e)  Representing that Dr. Helbig was a neutral third-party when she in fact had prior experience with Varillus and was involved in Seller's and Seller's Agent's attempt to sell Varillus; and

(f)    Dr. Helbig numerous oral statements made to Ms. Kaiser during the [pre-purchase examination] PPE, that were complimentary of Varillus and reflected positively on his ability to perform the Intended Uses, and which were contradicted by information on the PPE form, or omitted additional material facts.

63.    Defendants knew these representations to be false when made, and did so with the intention to deceive Ms. Kaiser so that she would enter into the sales transaction and purchase Varillus.

64.    Defendants knew Ms. Kaiser would not enter into the sales transaction and purchase Varillus if she knew the full extent of his Medical Conditions; and therefore made these false and fraudulent misrepresentations of material facts with the specific intent that Ms. Kaiser would think Varillus was healthy and suitable for the Intended Uses, and therefore be induced to enter into the sales transaction and purchase Varillus.

(Doc. No. 1).   Unlike her allegations set forth in Count Three, Kaiser specifically pleaded actual knowledge in paragraphs 63 and 64 in Count Four.  (*Id.*).  Construed accordingly, we conclude that the allegations in the complaint indicate that Kaiser's claim against Dr. Helbig, LEC, and HVC for fraudulent misrepresentation (under Count Four) is separate and independent from the veterinary-malpractice claims. Thus, the trial court should not have dismissed Count Four of Kaiser's complaint.

{¶15} Lastly, we address Kaisers's arguments regarding whether the trial court erred in precluding equitable tolling as a remedy to her veterinary-malpractice claims.  Because Kaiser does not challenge that trial court's determination that her claims (although pleaded as negligence and breach-of-contract claims) were

veterinary-malpractice claims, we apply the one-year statute of limitation set forth

in R.C. 2305.11(A). R.C. 2305.11(A) provides in its pertinent part:

> An * * * action for malpractice other than an action upon a medical,
> dental, optometric, or chiropractic claim * * * shall be commenced
> within one year after the cause of action accrued * * *.

Under the equitable-tolling doctrine also known as the "discovery rule"

> the running of a statute of limitations is tolled where the plaintiff
> demonstrates that the *defendant took affirmative steps to conceal the
> plaintiff's cause of action*, and the plaintiff could not have discovered
> the cause of action within the applicable limitations period despite
> exercising due diligence.

(Emphasis added.) *Darby v. Twinsburg Township*, 9th Dist. Summit No. 29593,

2020-Ohio-2702, ¶ 11, quoting *Jacobson-Kirsch v. Kaforey*, 9th Dist. Summit No.

26102, 2012-Ohio-3553, ¶ 12, citing *Campbell v. Upjohn Co.*, 676 F.2d 1122, 1126

(6th Cir.1982). "A cause of action for fraud * * * accrues either when the fraud is

discovered, or [when] in the exercise of reasonable diligence, the fraud should have

been discovered." *Cundall v. U.S. Bank*, 122 Ohio St.3d 188, 2009-Ohio-2523, ¶

29, citing *Investors REIT One v. Jacobs*, 46 Ohio St.3d 176 (1986), paragraph 2b of

the syllabus; *Burr v. Stark Cty. Bd. of Commrs.*, 23 Ohio St.3d 69 (1986). "When

determining whether the exercise of reasonable diligence should have discovered a

case of fraud, the relevant inquiry is whether the facts known "'would lead a fair

and prudent man, using ordinary care and thoughtfulness, to make further inquiry *

* *."'" *Id.*, quoting *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 181 (1984),

quoting *Schofield v. Cleveland Trust Co.*, 149 Ohio St. 133, 142 (1948), and citing *Stokes v. Berick*, 11th Dist. Lake No. 98-L-094, 1999 WL 1313668, *5 (Dec. 23, 1999) ("it is necessary to look to the 'essential character' of a plaintiff's claim").

{¶16} Our review of the record reveals that Kaiser discovered the alleged fraud in June 2016 (exercising reasonable diligence) upon the discovery of the horse's lameness. (*See* Doc. Nos. 5, 6, 8). Thereafter, she commenced her civil action in Pennsylvania in February 2018, but her claims were dismissed four months later on June 27, 2018. (*See id.*). Notably, and under Ohio law, the "essential character" of Kaisers claims are rooted in professional negligence, which were time barred (in Ohio) at the commencement of her civil action in Pennsylvania (let alone) the subsequent filing of her civil action in Franklin County, Ohio. Put more plainly—Kaiser fails to point to any facts in the record demonstrating the defendants' prevented Kaiser from filling her civil action in the appropriate jurisdiction and within the applicable statute of limitations. Thus, we cannot conclude the trial court erred in its determination (as to Counts One and Two) that the discovery rule has no bearing herein.

{¶17} Having found no error prejudicial to the appellant in the particulars assigned and argued in the portion of the first assignment of error as it relates to the appellant's claim for fraudulent concealment and argued in the second assignment

of error, the judgment of Union County Court of Common Pleas is affirmed as to these issues.

{¶18} Having found error prejudicial to the appellant in the particulars assigned and argued in the first assignment of error as to appellant's fraudulent-misrepresentation claim, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

*Judgment Affirmed in Part,*
*Reversed in Part, and*
*Cause Remanded*

**WILLAMOWSKI, P.J. and SHAW, J., concur.**

**/jlr**