[Cite as *Galoski v. MedVet Assocs., L.L.C.*, 2026-Ohio-892.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Christian Galoski, | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 25AP-610 |
| v. | : | (C.P.C. No. 23CV-5329) |
| MedVet Associates, LLC, d.b.a. MedVet, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on March 17, 2026

**On brief:** *Emerson Thomson Bennett*, *LLC*, and *Todd A. Fichtenberg*, for appellant. **Argued:** *Todd A. Fichtenberg.*

**On brief:** *Rolfes Henry Co.*, *LPA*, *Jerome F. Rolfes*, and *Paige Crossley Tate*, for appellee. **Argued:** *Jerome F. Rolfes.*

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1}  Plaintiff-appellant, Christian Galoski, appeals from a judgment of the Franklin County Court of Common Pleas granting a motion for summary judgment filed by defendant-appellee, MedVet Associates, LLC ("MedVet"), denying Galoski's motion for partial summary judgment, and resolving other pending motions.  For the following reasons, we affirm.

**I.  Facts and Procedural History**

{¶ 2}  Galoski's claims relate to the diagnosis and treatment of Bailey, his ten-year-old dog, at MedVet's facilities in Cincinnati and Columbus.  Galoski asserts that he began giving Bailey phenobarbital to treat seizures in March 2022.  He then took Bailey to a MedVet facility in Cincinnati on April 27, 2022, and consulted Maya Krasnow, DVM, about

Bailey's condition. Bailey was diagnosed with a non-cancerous brain tumor on June 2, 2022, and Dr. Krasnow recommended radiation treatment. Galoski asserts he entered into a contract with MedVet on June 9, 2022, to have Bailey treated by radiation therapy. Galoski claims he wanted quick treatment and objected to a treatment plan that involved performing a CT scan on June 20, 2022, and beginning radiation therapy on June 27, 2022. Galoski asserts that, in response to his objections, Margaret Rogers, DVM, told him that Bailey's tumor would not grow while waiting for the scan and treatment.

{¶ 3} Bailey continued to have seizures during June 2022, and, on June 26, 2022, Galoski took Bailey to MedVet's emergency room facility in Columbus, Ohio. Galoski claims that the following evening, Erik Wegner-Clemens, DVM, recommended that Bailey be euthanized. Galoski asserts he asked if he could take Bailey to the MedVet facility in Cincinnati for radiation therapy, but Dr. Wegner-Clemens stated there was no path forward for Bailey. Bailey was euthanized on June 27, 2022. Galoski asserts that he subsequently learned from Dr. Rogers that she would have been willing to try radiation therapy and was lobbying for the radiation oncologist at the MedVet facility in Columbus to radiate the tumor on June 27, 2022.

{¶ 4} On July 27, 2023, Galoski filed a complaint in the Franklin County Court of Common Pleas, naming MedVet as the sole defendant, and asserting claims for negligence, breach of contract, negligent misrepresentation, failure to deliver bailed property, and intentional infliction of emotional distress. MedVet moved for summary judgment on all Galoski's claims, asserting the claims involved allegations of veterinary negligence and that it could not be held directly liable for veterinary negligence as an entity because it did not hold a license to practice veterinary medicine. MedVet asserted it was a corporate entity that operated veterinary hospitals, and that the individual doctors working in those hospitals were the ones who practiced veterinary medicine. MedVet further asserted that it could not be held vicariously liable for the acts of its veterinarians because Galoski had not named any of the individual veterinarians as defendants. MedVet argued that all Galoski's claims were subsumed within his allegations of veterinary negligence.

{¶ 5} Galoski opposed MedVet's motion for summary judgment, arguing that his complaint asserted claims against MedVet for direct liability, not vicarious liability for veterinary malpractice. Galoski further argued that he should be afforded an opportunity

to remedy any deficiencies the trial court found in his claims. Galoski also moved for partial summary judgment in his favor, asserting he was entitled to summary judgment in his favor on his claims for negligence and negligent misrepresentation.

{¶ 6} The trial court granted MedVet's motion for summary judgment and denied Galoski's motion for partial summary judgment. The court concluded that all five of the claims asserted in Galoski's complaint were based in veterinary malpractice. The court reasoned that only individual veterinarians could commit veterinary malpractice because only individual veterinarians were licensed to practice veterinary medicine. The trial court concluded MedVet could not be directly liable for veterinary malpractice and could not be vicariously liable in this case because the complaint did not name any of the individual veterinarians as defendants. The court further concluded that Galoski was time-barred from pursuing veterinary malpractice claims against any of the individual veterinarians involved in Bailey's treatment because the statute of limitations had expired and the complaint could not be amended to add another party or vicarious liability claim against MedVet.[1]

## II. Assignments of Error

{¶ 7} Galoski appeals and assigns the following four assignments of error for our review:

> [I.] The trial court erred as a matter of law in finding Plaintiff-Appellant's claims were based in veterinary malpractice.
>
> [II.] The trial court erred as a matter of law in finding Plaintiff-Appellant could not bring direct claims against Defendant-Appellee.
>
> [III.] The trial court abused its discretion in finding Plaintiff-Appellant could not amend his Complaint.
>
> [IV.] The trial court erred in granting summary judgment to Defendant-Appellee.

---

[1] The trial court also ruled on other pending motions by granting MedVet's motion for leave to file an amended reply memorandum instanter in support of its motion for summary judgment, denying Galoski's motion to strike MedVet's reply memorandum in support of its motion for summary judgment, denying MedVet's request for hearing on all pending motions, and denying MedVet's objections and motions to strike.

## III. Discussion

### A. Standard of Review

{¶ 8} We review de novo a trial court's grant of summary judgment, conducting an independent review of the record and affording no deference to the trial court's decision. *Premiere Radio Networks, Inc. v. Sandblast, L.P.*, 2019-Ohio-4015, ¶ 6 (10th Dist.). Summary judgment is appropriate where "the moving party demonstrates that: (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made." *Capella III, L.L.C. v. Wilcox*, 2010-Ohio-4746, ¶ 16 (10th Dist.), citing *Gilbert v. Summit Cty.*, 2004-Ohio-7108, ¶ 6.

{¶ 9} The party seeking summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying the portions of the record demonstrating the absence of a genuine issue of material fact. *Dresher v. Burt*, 1996-Ohio-107, ¶ 18. If the moving party fails to satisfy that burden, the court must deny the motion for summary judgment. *Id.* If the moving party satisfies the initial burden, the non-moving party has a reciprocal burden to set forth specific facts demonstrating that a genuine issue of material fact exists for trial. *Id.* When ruling on a motion for summary judgment, the court must resolve all doubts and construe the evidence in favor of the non-moving party. *Premiere Radio* at ¶ 6.

### B. Whether the trial court erred by determining that Galoski's claims sounded in veterinary malpractice

{¶ 10} In his first assignment of error, Galoski asserts the trial court erred by concluding that the claims asserted in his complaint were based in veterinary malpractice. The trial court found that a full and complete reading of the complaint established that Galoski was effectively asserting that he brought Bailey to MedVet's facility for treatment, that Bailey was not given the care that a veterinarian of ordinary skill, care, and diligence would have given, and that Bailey died as a result. Therefore, the trial court concluded, Galoski "is clearly asserting a claim sounding in veterinary professional negligence and is merely attempting to relabel it under different names." (June 27, 2025 Decision & Entry at 10.)

{¶ 11} Galoski argues the trial court misconstrued his claims as veterinary malpractice claims, asserting that his complaint made no reference to malpractice and did not relate to the judgment exercised by any individual veterinarian. Galoski asserts he contracted with MedVet, not any of the individual veterinarians, to have Bailey treated and entrusted Bailey to MedVet's care.

{¶ 12} " 'The term "malpractice" refers to professional misconduct, *i.e.*, the failure of *one rendering services in the practice of a profession* to exercise that degree of skill and learning normally applied *by members of that profession* in similar circumstances.' " (Emphasis in original.) *Natl. Union Fire Ins. Co. of Pittsburgh, PA v. Wuerth*, 2009-Ohio-3601, ¶ 15, quoting *Strock v. Pressnell*, 38 Ohio St.3d 207, 211 (1988), citing 2 Restatement of the Law 2d, Torts, § 299A (1965). This court and other Ohio courts have held that the elements of a veterinary negligence claim—i.e., a duty to perform according to appropriate standards of veterinary medicine, a breach of that duty, damages resulting from the breach, and proximate causation of the damages by the breach—are analogous to those for a professional negligence claim against other medical professionals. *See Kaiser v. Helbig*, 2021-Ohio-887, ¶ 9 (3d Dist.); *Cerimele v. Van Buren*, 2013-Ohio-1277, ¶ 25 (7th Dist.); *Lauderbaugh v. Gellasch*, 2008-Ohio-6500, ¶ 7 (8th Dist.); *Ullmann v. Duffus*, 2005-Ohio-6060, ¶ 14 (10th Dist.); *Peltier v. McCartan*, 2005-Ohio-3901, ¶ 9 (3d Dist.); *Turner v. Sinha*, 65 Ohio App.3d 30, 35 (12th Dist. 1989).

{¶ 13} In the context of legal malpractice, we have held that "[w]hen the gist of a complaint sounds in malpractice, other duplicative claims are subsumed within the legal malpractice claim." *Ill. Natl. Ins. Co. v. Wiles, Boyle, Burkholder & Bringardner Co., L.P.A.*, 2010-Ohio-5872, ¶ 15 (10th Dist.). *See Muir v. Hadler Real Estate Mgt. Co.*, 4 Ohio App.3d 89, 90 (10th Dist. 1982) ("Malpractice by any other name still constitutes malpractice."). "The gist of a complaint sounds in malpractice when the allegations focus on the manner in which the attorney represented the client." *Nalluri v. Jones*, 2020-Ohio-4280, ¶ 17 (10th Dist.). We have considered whether a claim "clearly stems from" legal representation in determining whether it should be properly considered to be a legal malpractice claim. *Kravitz, Brown & Dortch, L.L.C. v. Klein*, 2016-Ohio-5594, ¶ 15 (10th Dist.). In *Klein*, this court concluded that a breach of contract claim based on allegations that attorneys billed excessive hours and failed to issue monthly invoices was effectively a

legal malpractice claim because it related to the quality of the legal representation provided by the attorneys. *Id.* at ¶ 16-20. The assertion that a breach of contract occurred because the attorneys billed for excessive hours "actually concern[ed] the quality of the work that [the attorneys] performed while legally representing [the client], since it's only as a result of [the attorneys'] purported inefficiency while working on the case that the charges ended up being so high." *Id.* at ¶ 18. Similarly, the court reasoned that failure to issue monthly invoices and keep the client informed of the costs of litigating the case "constitute[d] a lack of proper professional conduct by [the attorneys], which relates to the quality of the legal representation" provided. *Id.* at ¶ 20. The court also concluded that an unjust enrichment claim was effectively a malpractice claim arising out of the legal representation because it related to the quality of the legal services provided by the attorneys. *Id.* at ¶ 21.

{¶ 14} Ohio courts have applied similar reasoning in medical malpractice cases, holding that the statute of limitations or statute of repose for medical claims may apply even when other causes of action are asserted in a complaint if those causes of action relate to medical treatment. In affirming a summary judgment decision that also effectively denied a motion to amend a complaint to add a fraud claim, the First District Court of Appeals asserted that "[c]lever pleading cannot transform what are in essence medical claims into claims for fraud." *Hensley v. Durrani*, 2013-Ohio-4711, ¶ 19 (1st Dist.). The court concluded the alleged misrepresentations and omissions cited to support the proposed fraud claim related to the physician's medical diagnosis and treatment, making the fraud claim subject to the same statute of limitations as the plaintiff's original medical claim. *Id.* at ¶ 20. Because the statute of limitations for bringing a medical claim had expired, it would have been futile to allow the plaintiff to amend the complaint to include the fraud claim. *Id.* This court and others have applied similar reasoning in determining the appropriate statute of limitations or other procedural requirements. *See Canady v. Taylor*, 2008-Ohio-2801, ¶ 9 (10th Dist.) (holding that plaintiff was required to submit an affidavit of merit because all of his claims related to medical treatment and diagnosis although they had been framed as claims for ordinary negligence and fraud); *Amadasu v. O'Neal*, 2008-Ohio-1730, ¶ 8-9 (1st Dist.) (holding that the statute of limitations for medical claims applied to entire complaint because all causes of action related to medical treatment notwithstanding that the claims were titled in the complaint as assault and

battery, breach of fiduciary duty, and violations of the Ohio Consumer Sales Practices Act); *Leffler v. John & Alan Burley, D.D.S., Inc.*, 2004-Ohio-913 (12th Dist.) ("[A]ny attempt to couch appellant's complaint as a cause of action other than dental malpractice, such as breach of contract or battery, must also fail. The applicable statute of limitations is determined from the gist of the complaint, not by the form of the pleading.").

{¶ 15} Applying this reasoning to the present case, Galoski's claims should be considered malpractice claims if the gist of those claims sound in veterinary malpractice, regardless of how Galoski captioned them in his complaint. The gist of a claim sounds in veterinary malpractice if it clearly stems from veterinary medical services rendered and a failure to perform according to the appropriate standards of veterinary medicine. Accordingly, we must look to the allegations Galoski made in support of his claims. *See Amadasu* at ¶ 9 ("An examination of the factual basis of [the plaintiff's] claims reveals that all of his causes of action related to medical treatment by [the physician and hospital]."). In his negligence claim, Galoski asserted MedVet had a duty to "provide reasonable and diligent veterinarian care to Bailey" and failed to satisfy that duty. (Compl. at ¶ 22.) Similarly, in his breach of contract claim, Galoski asserted MedVet was "required to maintain the appropriate standard of reasonable and diligent care and treatment for the veterinarian services it provides" and the services provided to Galoski were inadequate, substandard, or otherwise failed to conform to the appropriate standard. (Compl. at ¶ 30.) In his intentional infliction of emotional distress claim, Galoski alleged MedVet owed him "a duty to provide the appropriate standard of care and treatment for the veterinarian services it provides" and breached that duty. (Compl. at ¶ 45.) These claims clearly stem from the veterinary care provided to Bailey and Galoski's assertion that the veterinary services provided did not satisfy the applicable standard of veterinary medical care. In his negligent misrepresentation claim, Galoski asserted MedVet "by and through its agents, supplied false information as to the amount of time Bailey had to receive life-saving treatment." (Compl. at ¶ 36.) This is effectively an assertion that the veterinarians who treated Bailey fell short of the standard of care in determining and communicating the appropriate timeline for her treatment, which relates to the veterinary medical services provided by MedVet's veterinarians. Finally, the failure to deliver bailed property claim asserted that Galoski entrusted Bailey to MedVet and they failed to redeliver Bailey to him.

The reason Bailey was not returned to Galoski in the same condition in which she was entrusted to MedVet was because one of the veterinarians recommended that she be euthanized. Thus, that claim also related to the veterinary medical advice and services that were given by MedVet's veterinarians.

{¶ 16} Because the allegations supporting Galoski's claims focus on the veterinary medical services provided in treating Bailey, the trial court properly concluded that the gist of those claims sounded in veterinary malpractice. Therefore, we conclude that the trial court did not err by holding that Galoski's claims were veterinary malpractice claims and we overrule Galoski's first assignment of error.

### C. Whether the trial court erred by concluding that MedVet could not be directly liable for Galoski's claims and granting summary judgment in favor of MedVet

{¶ 17} In his second assignment of error, Galoski asserts the trial court erred by concluding that he could not bring direct claims against MedVet. In his fourth assignment of error, Galoski asserts the trial court erred by granting summary judgment in favor of MedVet. Because these assignments of error are related, we will address them together.

{¶ 18} Citing a concurring opinion in *Wuerth*, Galoski argues it is possible for an entity such as MedVet to be directly liable for claims other than malpractice. Galoski asserts his claims against MedVet were such direct liability claims and argues there were genuine issues of material fact as to whether MedVet was liable on those claims.

{¶ 19} Galoski is correct that in a concurring opinion in *Wuerth*, former Chief Justice Moyer stated that the Supreme Court of Ohio's decision "does not foreclose the possibility that a law firm may be directly liable on a cause of action other than malpractice." *Wuerth*, 2009-Ohio-3601 at ¶ 35 (Moyer, C.J., concurring). *See Tobin v. Steptoe & Johnson, P.L.L.C.*, 2018-Ohio-2957, ¶ 8, fn. 1 (10th Dist.) (noting the caveat expressed in Chief Justice Moyer's concurrence but holding it was not at issue because the plaintiff had filed a claim against a law firm for legal malpractice). When faced with a similar argument that a fraud claim was an independent cause of action from a claim for veterinary malpractice, the Third District Court of Appeals found guidance in a decision from the Supreme Court holding that under certain circumstances a physician could be subject to claim for fraud that was independent from a medical malpractice claim. *Kaiser*, 2021-

Ohio-887, at ¶ 11 (3d Dist.), citing *Gaines v. Preterm-Cleveland, Inc.,* 33 Ohio St.3d 54 (1987). We also look to the reasoning in *Gaines* on this question.

{¶ 20} The plaintiff in *Gaines* had previously gone to a health care facility for termination of a pregnancy and removal of an intrauterine device. *Gaines* at 54. The termination was completed but the intrauterine device was not removed; however, the plaintiff alleged she was told that both procedures had been successfully completed. *Id.* When the plaintiff later learned, following a subsequent procedure, that the intrauterine device had not been removed, she filed suit against the health care facility. *Id.* The trial court granted summary judgment in favor of the health care facility based on the statute of limitations for medical malpractice claims. The court of appeals affirmed, rejecting the plaintiff's argument that she had stated an independent action for fraud that was timely under the statute of limitations for fraud claims. *Id.* at 55. On appeal, the Supreme Court reversed, concluding that the plaintiff's allegations stated a cause of action for fraud that was separate and independent from a malpractice claim. *Id.* The Supreme Court concluded that "a physician's knowing misrepresentation of a material fact concerning a patient's condition, on which the patient justifiably relies to his detriment, may give rise to a cause of action in fraud independent from an action in medical malpractice." *Id.* at 56. The Supreme Court further held that such a fraud action "is separate and distinct from the medical malpractice action which stems from the surrounding facts where the decision to misstate the facts cannot be characterized as medical in nature." *Id.* The Supreme Court reasoned that there was no medical consideration that would have supported telling the plaintiff her intrauterine device had been removed when it actually had not; therefore, those facts supported a fraud claim that was independent from any medical malpractice claim arising from the incident. *Id.*

{¶ 21} Unlike *Gaines*, where the Supreme Court found that the alleged misrepresentation could not be characterized as medical in nature, all of Galoski's claims in this case related to the veterinary medical care provided to Bailey. Even the alleged negligent misrepresentation related to how quickly Bailey needed to be treated. Galoski has not alleged conduct by MedVet or its veterinarians that does not involve the exercise of veterinary medical judgment or delivery of veterinary medical care. Thus, while *Wuerth*

may have left open the door for direct claims other than malpractice against an entity such as MedVet, Galoski has failed to establish such direct claims in this case.

{¶ 22} The Supreme Court has held that "[a] hospital does not practice medicine and is incapable of committing malpractice." *Browning v. Burt*, 1993-Ohio-178, ¶ 40, *superseded by statute on other grounds* as stated in *Couch v. Durrani*, 2021-Ohio-726, ¶ 13 (1st Dist.). The Supreme Court also has held that a law firm cannot directly commit legal malpractice because it is an entity through which individual attorneys practice their profession and does not itself engage in the practice of law. *Wuerth*, 2009-Ohio-3601, at ¶ 18. Applying that reasoning to this case, it follows that because MedVet as an entity does not practice veterinary medicine, it cannot be directly liable for veterinary malpractice. As explained in our analysis of the first assignment of error, Galoski's claims were effectively veterinary malpractice claims. Therefore, MedVet was entitled to judgment as a matter of law on Galoski's claims and the trial court did not err by granting summary judgment in favor of MedVet.

{¶ 23} Accordingly, we overrule Galoski's second and fourth assignments of error.

### D. Whether the trial court erred by concluding that Galoski could not amend his complaint to name the individual veterinarians as defendants or assert vicarious liability claims against MedVet

{¶ 24} In his third assignment of error, Galoski argues the trial court abused its discretion by concluding that he could not amend his complaint. The trial court concluded Galoski was barred from pursuing veterinary malpractice claims against any of the individual veterinarians based on the statute of limitations because of the length of time that had passed since Bailey's death. The court further concluded that any vicarious liability claim against MedVet based on alleged veterinary malpractice committed by any of the individual veterinarians was likewise barred under the statute of limitations. Based on those conclusions, the trial court asserted Galoski could not amend his complaint.

{¶ 25} As noted above, in his opposition to MedVet's motion for summary judgment, Galoski argued he should be afforded an opportunity to remedy any deficiencies found in his claims. On appeal, however, Galoski asserts that he never sought to amend his complaint to add additional parties or to assert a vicarious liability claim against MedVet. Thus, Galoski appears to argue that the trial court erred by denying relief that he had not sought. Taking Galoski's argument at face value, he has failed to demonstrate any harm

resulting from the trial court's assertion that he could not amend his complaint. *See* Civ.R. 61 ("No error . . . or defect in any ruling or order or in anything done or omitted by the court . . . is ground for . . . vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice.").

{¶ 26} Accordingly, we overrule Galoski's third assignment of error.

**IV. Conclusion**

{¶ 27} For the foregoing reasons, we overrule Galoski's four assignments of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BOGGS, P.J., and MENTEL, J., concur.

_____